In the

# United States Court of Appeals
## For the Seventh Circuit

No. 05-2711

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JOSHUA BELK,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:03 CR 70—**James T. Moody**, *Judge.*

ARGUED JANUARY 11, 2006—DECIDED JANUARY 31, 2006

Before FLAUM, *Chief Judge*, and EASTERBROOK and MANION, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* In 1996 George Rogge hired Joshua Belk as the bookkeeper for his insurance agency. Belk decided that he could multiply his income through embezzlement. Over the years he siphoned more than $675,000 from Rogge's business, driving it into bankruptcy. Belk has been convicted of mail fraud, see 18 U.S.C. §1341, because several of the devices used to divert funds from Rogge's accounts to his own entailed mailings. Only the sentence—51 months' imprisonment plus $678,306.65 in restitution to George C. Rogge Agency, Inc.—is contested on appeal.

The eight counts of conviction stem from checks that diverted $60,600 from Rogge to Belk. He contends that the district court should have used this sum as both the loss, when performing the advisory Guidelines calculations, and the amount of restitution. The argument depends largely on the sixth amendment and *United States v. Booker*, 543 U.S. 220 (2005), but ignores the remedial portion of that decision, which concluded that judges may continue to make findings based on a preponderance of the evidence, provided that they do not treat the Sentencing Guidelines as "laws" with binding effect. The district court, which sentenced Belk six months after *Booker*, applied that decision correctly. Belk does not deny that a preponderance of the evidence demonstrates that the loss under U.S.S.G. §2B1.1(b) exceeds $400,000. His sentence of 51 months falls within a properly calculated range (51-63 months) for such a loss and so is presumptively appropriate. *United States v. Mykytiuk*, 415 F.3d 606 (7th Cir. 2005); *United States v. Dean*, 414 F.3d 725 (7th Cir. 2005). Belk does not offer us any reason to deem his sentence unreasonable, beyond his mistaken belief that the jury had to determine the loss.

Belk's protest about the amount of restitution likewise fails to the extent it rests on *Booker*, for restitution lacks a "statutory maximum" and the whole *Apprendi* framework (of which *Booker* is an instance) therefore is inapplicable. See, e.g., *United States v. George*, 403 F.3d 470, 473 (7th Cir. 2005); *United States v. Behrman*, 235 F.3d 1049, 1054 (7th Cir. 2000). That the judge relied on hearsay is normal and appropriate in sentencing; Belk does not contend that this hearsay (which reflects the Rogge agency's financial records) was unreliable. The district judge was not obliged to explain why he ordered restitution while deeming Belk unable to pay a fine. Before 1996 such an explanation for apparently inconsistent conclusions was vital, see *United States v. Ahmad*, 2 F.3d 245 (7th Cir. 1993), but the Mandatory Victim Restitution Act, 18 U.S.C. §3663A,

makes a judgment of restitution obligatory regardless of the defendant's current or anticipated ability to pay, so there is no inconsistency to explain.

Restitution is limited to the loss caused by the crimes of which the defendant stands convicted, unless he agrees to pay more, which Belk did not. See §3663A(a); *Hughey v. United States*, 495 U.S. 411 (1990); *United States v. Peterson*, 268 F.3d 533 (7th Cir. 2001). Belk contends that he has been convicted only of the eight mailings by which he extracted $60,600. That misunderstands the nature of a §1341 conviction, however. The "crime" covered by §1341 is the *scheme* to defraud, not (just) the mailings that occur in the course of the scheme. This indictment laid out, and the jury convicted Belk of, a multi-year scheme to defraud Rogge's brokerage. The eight mailings were just overt acts. Restitution for the whole scheme is in order. See, e.g., *United States v. Mitrione*, 357 F.3d 712, 721 (7th Cir. 2004); *United States v. Brown*, 47 F.3d 198 (7th Cir. 1995); *United States v. Turino*, 978 F.2d 315, 319 (7th Cir. 1992); *United States v. Brothers*, 955 F.2d 493 (7th Cir. 1992); *United States v. Bennett*, 943 F.2d 738 (7th Cir. 1991).

We recognize that some decisions limited restitution orders to amounts entailed in those particular mailings that underlie particular counts. See, e.g., *United States v. Seligsohn*, 981 F.2d 1418, 1421 (3d Cir. 1992). These decisions, however, did not consider the Crime Control Act of 1990, which vindicated our approach by defining as a "victim" entitled to compensation "any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." 104 Stat. 483 (1990), amending 18 U.S.C. §3663; see also 18 U.S.C. §3663A(a)(2). Courts that have considered the 1990 amendments follow this circuit's approach, and the third circuit has abandoned *Seligsohn*. See *United States v. Hensley*, 91 F.3d 274 (1st Cir. 1996); *United States v. Kones*, 77 F.3d 66, 68-70 (3d Cir. 1996) (restitution is appropriate, notwithstanding

*Seligsohn*, for losses "directly" caused by the entire scheme to defraud); *United States v. Stouffer*, 986 F.2d 916 (5th Cir. 1993); *United States v. Davis*, 170 F.3d 617, 627 (6th Cir. 1999); *United States v. Hasson*, 333 F.3d 1264, 1276 n.13 (11th Cir. 2003). No decision that has taken account of the amendments made in 1990 and 1996 supports Belk's position.

Even apart from the statutory definition of "victim," an approach that links restitution to the amount extracted by particular mailings is hard to reconcile with the fact that the fraud in a §1341 offense need not be conducted through the mails. One who hatches a fraudulent scheme and uses the mails to carry truthful matter that is important to the scheme's success still violates the statute. A good example is the odometer-rollback scheme in *Schmuck v. United States*, 489 U.S. 705 (1989), in which the fraud was a false representation to the purchasers that led them to pay too much for used cars, while the mails were used to send documents that enabled the defendant to transfer titles to the cars' buyers. On the view for which Belk contends, there could be no restitution for such schemes, because none of the mailings diverted any funds. Yet the fraudulent scheme would remain, and a criminal scheme that imposes loss may (and after 1996 must) lead to an award that makes the victim whole.

AFFIRMED

No. 05-2711    5

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*