In the

# United States Court of Appeals
### For the Seventh Circuit

No. 04-2364

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JAMES FRITH, JR.,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 CR 502—**Rebecca R. Pallmeyer**, *Judge.*

ARGUED DECEMBER 5, 2005—DECIDED AUGUST 29, 2006

Before POSNER, KANNE, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* A jury convicted James Frith, Jr. of two securities law violations (out of twenty-three charges) for operating his registered broker-dealership without enough money in its reserve accounts. His convictions, the result of financial shortfalls on a single day in 1997, were the culmination of a broader, seventeen-month charade during which Frith manipulated millions of dollars on his firm's books and filed false reports with regulators to conceal the true financial status of his firm. The district court sentenced Frith to 97 months in prison and ordered that he pay restitution of roughly $1.2 million.

On appeal Frith challenges both his sentence and the restitution order. He argues that the district court miscalcu-

lated the Sentencing Guidelines range based on losses attributable to noncriminal conduct and improperly applied enhancements. He also contends the restitution order was based on losses from relevant conduct (rather than the offenses of conviction), which is not a permissible basis for restitution.

We affirm the district court's loss calculation and application of the guidelines. Frith's guidelines range was based on properly applied enhancements and losses attributable to his crimes of conviction and relevant criminal conduct. We remand, however, for limited proceedings pursuant to *United States v. Paladino*, 401 F.3d 471, 484 (7th Cir. 2005) because Frith was sentenced prior to the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005) and the district judge applied the guidelines as mandatory. We vacate the restitution order and remand for further proceedings. Restitution must be based on the offense of conviction, not relevant conduct, and in this case the government did not link the restitution amount to the specific conduct for which Frith was convicted.

## I.  Background

James Frith was the sole shareholder of Chicago Partnership Board ("CPB"), a broker-dealer firm that matched buyers and sellers of limited partnership interests. Federal securities law requires firms like CPB to keep at least $250,000 in a net capital account and enough in a Special Reserve Account to cover the debts owed to customers. To assure investors and regulators of its compliance, CPB had to file monthly reports with the National Association of Securities Dealers ("NASD"), a private body empowered by the Securities and Exchange Commission to oversee the activities of broker-dealers.

Sometime in the mid-1990s, CPB began having difficulty maintaining its net capital and Special Reserve require-

ments. Frith manipulated millions of dollars on CPB's books to hide the shortfalls. He personally assumed debts CPB owed to its customers by having CPB write him checks for the amount of the debt and executing broker-dealer liability assumption agreements. Once CPB had the debt off its books, the amount needed to satisfy its Special Reserve requirements decreased correspondingly. Frith then would write CPB a check for the same amount—or almost the same amount (he put some of the money into his other companies)—which made it appear as though Frith had infused capital into CPB.

This activity came to an end in late 1997. Regulators caught CPB without enough money in its net capital and Special Reserve accounts on September 30, 1997, and shut it down by early December. CPB's customers and creditors lost millions. During ensuing bankruptcy proceedings, clients recovered some of what they were owed, but the Securities Investor Protection Corporation ("SIPC"), which guarantees customers' claims with failed brokerage firms up to $500,000 (much the same way the Federal Deposit Insurance Corporation guarantees bank deposits up to $100,000), had to make up much of the shortfall. It kicked in some $632,000 to make good on its guarantees. The bankruptcy estate also received a $450,000 payout from CPB's fidelity insurer and a $190,000 payout from Continental Casualty, the malpractice carrier for CPB's auditor. These proceeds went to compensate CPB clients for their losses.

A grand jury indicted Frith on twenty-three counts: eighteen counts of making false statements in filings to regulatory authorities, 15 U.S.C. §§ 78q(a)(1), 78ff; 17 C.F.R. § 240.17a-5(a); 18 U.S.C. § 1001; one count of willfully violating net capital requirements on or about September 30, 1997, 15 U.S.C. §§ 78o(c)(3), 78ff; 17 C.F.R. § 240.15c3-1; one count of willfully violating Special Reserve requirements on or about September 30, 1997, 15 U.S.C.

§§ 78o(c)(3), 78ff; 17 C.F.R. §§ 240.15c3-3, 240.15c3-3a; two counts of making false statements to a bank, 18 U.S.C. § 1014; and one count of bank fraud, 18 U.S.C. § 1344. The case proceeded to a jury trial and Frith was convicted on just two of the twenty-three counts: willfully violating net capital and Special Reserve requirements on September 30, 1997.

The district court applied the guidelines as mandatory—this was before the Supreme Court's decision in *Booker*—and sentenced Frith to 97 months in prison. Frith's offense level was primarily dictated by the court's calculation of the loss amount. *See* U.S.S.G. § 2F1.1 (1995).[1] The court calculated the loss by adding the $632,000 paid by the SIPC, the $450,000 paid by CPB's fidelity insurer, and the $190,000 paid by the malpractice carrier for CPB's auditor—that total serving as a proxy for the losses to CPB's clients. *See* 18 U.S.C. § 3664(j)(1). This loss of more than $1.2 million put Frith at offense level 17. The court then increased Frith's offense level to 30 after finding the offense involved more than minimal planning, § 2F1.1(b)(2)(A); substantially jeopardized the safety and soundness of a financial institution, § 2F1.1(b)(6); and that Frith was an organizer or leader, § 3B1.1(c), abused a position of trust, § 3B1.3, and obstructed justice, § 3C1.1. The 1995 guidelines range for offense level 30, criminal history category I (applicable to Frith) was 97-121 months. Noting that even the low end of the guidelines seemed harsh, the district judge sentenced Frith to 97 months and ordered restitution in the same amount as the guidelines loss calculation, approximately $1.2 million.

---

[1] The parties agree that the 1995 guidelines apply. All citations to the guidelines in this opinion are to that version.

## II.  Discussion

## A.  Calculation of the Guidelines Range

Frith argues on appeal that the district court miscalculated the amount of loss in determining his offense level under § 2F1.1. Loss amount for purposes of the guidelines must be calculated on the basis of the conduct of conviction and relevant conduct; relevant conduct must be criminal or unlawful conduct, though it need not have been charged. *See United States v. Schaefer*, 291 F.3d 932, 937-40 (7th Cir. 2002). Conduct underlying an acquitted charge may be included as long as that conduct is proved by a preponderance of the evidence. *United States v. Watts*, 519 U.S. 148, 157 (1997).

Frith argues the district court's loss calculation was based entirely on noncriminal conduct. He asserts that his alteration of CPB's books and the payouts he took for himself were "not criminal in and of themselves." Filing false reports with regulatory authorities and operating in violation of the net capital and Special Reserve requirements *is* criminal conduct, but according to Frith, did not cause any loss. He applies the same logic to attack the offense-level enhancement for substantially jeopardizing the safety and soundness of a financial institution, § 2F1.1(b)(6)(A), claiming he did nothing of a criminal nature to jeopardize the safety and soundness of CPB.

We review calculations of loss under the guidelines for clear error, *United States v. Berheide*, 421 F.3d 538, 540 (7th Cir. 2005), and application of the guidelines de novo, *United States v. Ellis*, 440 F.3d 434, 436 (7th Cir. 2006). The guidelines define loss as "the value of the money, property, or services unlawfully taken." U.S.S.G. § 2F1.1 cmt. n.7. Loss is not always a precise calculation; reasonable estimates will suffice for purposes of the guidelines. U.S.S.G. § 2F1.1 cmt. n.8. And, as we have noted, where losses are attributable to relevant conduct, the relevant

conduct must be criminal or unlawful conduct. *Schaefer*, 291 F.3d at 937-40; *see also United States v. Solis*, 299 F.3d 420, 461-62 (5th Cir. 2002); *United States v. Dove*, 247 F.3d 152, 155 (4th Cir. 2001); *United States v. Shafer*, 199 F.3d 826, 831 (6th Cir. 1999); *United States v. Jain*, 93 F.3d 436, 443 (8th Cir. 1996); *United States v. Dickler*, 64 F.3d 818, 830 (3d Cir. 1995). Also, to calculate loss for purposes of § 2F1.1, the guidelines call for consideration of losses attributable to all acts and omissions that were part of the same course of conduct or general scheme of wrongdoing. U.S.S.G. § 1B1.3(a)(2).

Most of the $1.2 million in losses found by the district court are attributable to relevant conduct that was part of Frith's scheme to operate CPB without enough money on hand to comply with the applicable net capital and Special Reserve requirements of the securities laws. Frith was charged with, though ultimately not convicted of, filing eighteen false reports with regulatory authorities during 1996 and 1997 misstating the true financial status of CPB. Besides being illegal themselves, the false reports covered up the fact that Frith was operating his broker-dealership in violation of laws designed to protect his clients. For seventeen months in 1996 and 1997 Frith operated his business by criminally deceiving regulatory authorities and the public. When authorities finally shut CPB down, there was not enough money to pay clients what they were owed. The SIPC's and fidelity insurer's payments were made to cover these client losses; the district court did not clearly err by including them in the loss amount calculation.

The $190,000 payment by CPB's auditor's malpractice carrier is another matter, however. It should not have been included in the calculation of loss amount. The money paid by the malpractice insurer for CPB's auditor was attributable to losses sustained by CPB's clients as a result of the auditor's acts or omissions, not Frith's. The point is academic, however; excluding the $190,000 from the

calculation, Frith's offense level remains the same. *See* U.S.S.G. § 2F1.1(b)(1). Accordingly, with this (harmless) exception, the district court did not clearly err in calculating loss amount for purposes of Frith's guidelines range.

Nor did the court err by applying the enhancement for substantially jeopardizing the safety and soundness of a financial institution. *See* § 2F1.1(b)(6)(A). The application notes to § 2F1.1 provide that a financial institution has been substantially jeopardized when "as a consequence of the offense, the institution became insolvent . . . or was unable on demand to refund fully any deposit, payment, or investment . . . or was placed in substantial jeopardy of any of the above." U.S.S.G. § 2F1.1 cmt. n.15. The district court need not have considered Frith's relevant conduct to impose this enhancement; operating CPB in violation of the net capital and Special Reserve requirements even for a single day meant that CPB could not pay its debts on demand. The district court correctly increased Frith's guidelines range under § 2F1.1(b)(6)(A).

That is not the end of the matter, however. The district court sentenced Frith to 97 months in prison—the low end of the properly calculated guidelines range of 97-120 months—applying the guidelines as mandatory. Frith did not object, so we review only for plain error. *United States v. Bonner*, 440 F.3d 414, 415-16 (7th Cir. 2006). The government concedes that a *Paladino* limited remand is appropriate so the district judge can advise us whether she would have sentenced Frith differently had she known the guidelines are advisory. *Paladino*, 401 F.3d at 484.

## B. Restitution

The district court ordered restitution in an amount equal to the loss it calculated—roughly $1.2 million. Frith says the order is improper because it is based entirely on

relevant conduct and restitution must be based on the conduct of conviction. We review the calculation of restitution for abuse of discretion. *United States v. Danford*, 435 F.3d 682, 689 (7th Cir. 2006); *United States v. Dorsey*, 27 F.3d 285, 291 (7th Cir. 1994). An order of restitution will be upset only if the district court used inappropriate factors or did not exercise discretion at all. *United States v. Havens*, 424 F.3d 535, 538 (7th Cir. 2005).

The parties discuss the propriety of restitution under 18 U.S.C. § 3663, the discretionary restitution statute, and 18 U.S.C. § 3663A, the mandatory restitution statute. The discretionary restitution provision, § 3663, was enacted in 1982 through the Victims and Witnesses Protection Act ("VWPA"). The mandatory restitution statute, § 3663A, was created by the Mandatory Victim Restitution Act ("MVRA"). Enacted in 1996, the MVRA also amended § 3663 and 18 U.S.C. § 3664, which governs the procedures applicable to restitution orders. *See United States v. Day*, 418 F.3d 746, 751-53 (detailing the statutory history and changes to restitution law and procedure wrought by the MVRA). Importantly for this case, both § 3663 and § 3663A are limited primarily to crimes under Title 18; § 3663 also covers some crimes under Titles 21 and 49. *See* 18 U.S.C. § 3663(a) (covering restitution only for offenses under Title 18; 21 U.S.C. §§ 841, 848(a), 849, 856, 861 & 863; and 49 U.S.C. §§ 46312, 46502 & 46504 except when the MVRA applies); 18 U.S.C. § 3663A(c)(1) (covering restitution only for crimes of violence under 18 U.S.C. § 16; offenses against property under Title 18; and offenses described in 18 U.S.C. § 1365). Frith was convicted of two Title 15 crimes, which are not specified in either § 3663 or § 3663A. *See* 3 BROMBERG AND LOWENFELD ON SECURITIES FRAUD & COMMODITIES FRAUD, § 6:374 at 6-1024 to 25 (2d ed. 2006).

Nonetheless, the district court had authority to order restitution as a condition of supervised release pursuant to

18 U.S.C. § 3583(d) and U.S.S.G. § 5E1.1(a)(2).[2] The supervised release statute specifically authorizes the district court to impose (among other conditions of supervised release) "any condition set forth as a discretionary condition of probation in section 3563(b)(1) through (b)(10)." 18 U.S.C. § 3583(d). Discretionary conditions of probation include "restitution to a victim of the offense under section 3556." 18 U.S.C. § 3563(b)(2). The cross-reference here is to the general restitution provision: "The court, in imposing sentence on a defendant who has been found guilty of an offense shall order restitution in accordance with section 3663A, and may order restitution in accordance with section 3663." 18 U.S.C. § 3556. The restitution statute further provides that "[t]he procedures under section 3664 shall apply to all orders of restitution under this section." *Id.* Accordingly, the district court's discretionary authority to order restitution as a condition of supervised release for a crime not specifically covered by either § 3663 *or* § 3663A is subject to the same rules and procedures that govern all other restitution orders.

Restitution orders are limited to: (1) losses caused by the specific conduct that is the basis of the offense of conviction; (2) losses caused by conduct committed during "an offense that involves as an element a scheme, conspiracy, or pattern"; and (3) restitution agreed to in a plea agreement. 18 U.S.C. §§ 3663 & 3663A; *Hughey v. United States*, 495 U.S. 411, 413 (1990); *United States v. Belk*, 435 F.3d 817, 819 (7th Cir. 2006); *United States v. Randle*, 324

---

[2] Regardless of whether an offense is listed in §§ 3663-3664, § 5E1.1 of the guidelines *directs* judges to order restitution when all other conditions of § 3663 or § 3663A are met. U.S.S.G. § 5E1.1(a)(2). But we have held that after *United States v. Booker*, 543 U.S. 220, 246, 259-60 (2005), § 5E1.1 is advisory. *See United States v. Day*, 418 F.3d 746, 751 n.2 (7th Cir. 2005); *United States v. Pree*, 408 F.3d 855, 876 (7th Cir. 2005).

F.3d 550, 556 (7th Cir. 2003). These limitations are based on the language of the restitution statutes. *Hughey*, 495 U.S. at 416-20; *Randle,* 324 F.3d at 556. Both §§ 3663 and 3663A refer to restitution to victims of "the offense," and this language has been interpreted to mean the offense of conviction. *Hughey*, 495 U.S. at 416; *Randle*, 324 F.3d at 556. Both statutes also contemplate restitution for losses suffered during the course of a scheme, pattern, or conspiracy, when those are elements of the crime. *See* 18 U.S.C. §§ 3663(a)(2), 3663A(a)(2). Finally, both statutes allow for restitution as bargained for in plea agreements. 18 U.S.C. §§ 3663(a)(3), 3663A(a)(3). Relevant conduct is not within the scope of either statute. *See, e.g.*, *Belk*, 435 F.3d at 819; *Randle*, 324 F.3d at 556; *United States v. Scott*, 250 F.3d 550, 553 (7th Cir. 2003).

Similarly, § 3583 authorizes restitution to "the victim of the offense" as a condition of supervised release. Also, the guidelines restitution provision, § 5E1.1, incorporates § 3663 but also specifically provides for restitution as a condition of probation or supervised release if the offense is not one for which restitution is authorized under § 3663. *See* U.S.S.G. §§ 5E1.1(a)(1) & (a)(2). The government concedes that in this case, only the first of the restitution criteria noted above applies—Frith may be ordered to pay restitution for losses caused by the conduct underlying his two counts of conviction.

Frith's crimes of conviction are highly specific: on September 30, 1997, he violated the net capital and Special Reserve requirements of the federal securities laws. To convict Frith of the former crime, the government had to prove: (1) CPB was a broker-dealer; (2) on or about September 30, 1997, CPB was in violation of the net capital requirements; (3) Frith knew CPB was violating the net capital requirements; (4) Frith continued operating CPB knowingly when it was in violation of the net capital requirements; and (5) CPB used the mails or other instru-

mentalities of interstate commerce to conduct business. Similarly, to convict Frith of the latter offense, the government had to prove: (1) CPB was a broker-dealer; (2) on or about September 30, 1997, CPB did not have enough money in its Special Reserve Account; (3) Frith knew CPB did not have enough money in the Special Reserve Account; (4) Frith continued operating CPB knowingly when it did not have enough money in its Special Reserve Account; and (5) CPB used the mails or other instrumentalities of interstate commerce to conduct business.

The government maintains that all the losses attributable to Frith's conduct over the course of 1996 and 1997 can be considered part of the crimes for which Frith was convicted. It characterizes Frith's two September 30, 1997 crimes as a "snapshot" of his entire course of wrongdoing. This is an odd argument considering that the jury found Frith guilty of two discrete offenses, both committed on one day, and acquitted Frith on the balance of the charged counts covering the longer time period. Frith's wrongdoing throughout 1996 and 1997 may properly be taken into account as relevant conduct for purposes of the loss calculation under the guidelines, as we have noted. But as this record stands there is no indication—no showing by the government and no finding by the district court—that the entire $1.2 million in losses can be attributed to Frith's crimes on September 30, 1997.

That is not to say that *some* losses cannot be attributed to Frith's criminal conduct on September 30, 1997. Thus far, however, no such showing has been made. Because the restitution order was not tied to the specific conduct of conviction, the district court had no authority to award it, and that is necessarily an abuse of discretion. *See, e.g.*, *Hobley v. Burge*, 433 F.3d 946, 949 (7th Cir. 2006) ("A district court by definition abuses its discretion when it makes an error of law. . . ."). We vacate the restitution order and remand for a new restitution hearing.

We should comment on two other matters specific to restitution. First, roughly $360,000 of the money from the CPB bankruptcy estate was used to pay the administrative costs of liquidation in bankruptcy. Frith maintains that if that money had gone to pay CPB's debts, the total loss to the victims would have been $360,000 less and that he therefore should be given credit for this $360,000. Frith cites no authority for the proposition that the district court *must* credit him. Instead, his argument essentially is that the district court *could* have credited him. Restitution orders are reviewed for abuse of discretion; we will not direct the district court on remand one way or another.

Second, as we have explained, the $190,000 paid by the malpractice carrier for CPB's auditor did not belong in the guidelines calculation of loss; it does not belong in an award of restitution, either. The government says that award is supported—in fact, *required*—by 18 U.S.C. § 3664(j)(1), which provides: "If a victim has received compensation from insurance or any other source with respect to a loss, the court shall order that restitution be paid to the person who provided or is obligated to provide the compensation." A "victim" is a "person directly and proximately harmed as a result of the commission of" a crime. 18 U.S.C. § 3663A(a)(2). A victim of the malpractice of CPB's auditor is not a victim of Frith's crime, at least not directly. The malpractice insurer for CPB's auditor paid the claim to settle issues concerning the auditor's acts or omissions; the $190,000 compensated victims of poor accounting practices, not Frith's fraud. This is the sort of indirect loss that we have said is not appropriately included in restitution orders. *See* 18 U.S.C. § 3663A(a)(2); *United States v. George*, 403 F.3d 470, 474 (7th Cir. 2005) ("'Loss' means direct injury, not consequential damages."); *United States v. Shepard*, 269 F.3d 884, 887 (7th Cir. 2001).

The judgment of the district court with respect to the order of restitution is VACATED, and the case is REMANDED

for further proceedings consistent with this opinion. Restitution is not mandatory, but the district court may in its discretion order restitution as a condition of supervised release. We draw the court's attention to the procedural requirements of *Day,* 418 F.3d at 460-61. We also order a LIMITED REMAND consistent with this court's opinion in *Paladino*, 401 F.3d at 484.

AFFIRMED IN PART;
REVERSED and REMANDED IN PART.

A true Copy:

       Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*
