# Status of the Public Company Accounting Oversight Board Under 18 U.S.C. § 207(c)

A former senior employee of the Securities and Exchange Commission communicating with the Commission on behalf of the Public Company Accounting Oversight Board during the year after his service as a senior employee at the Commission ends would not be communicating on behalf of the United States and therefore 18 U.S.C. § 207(c) would apply to bar such a communication.

March 30, 2007

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
SECURITIES AND EXCHANGE COMMISSION

Under 18 U.S.C. § 207(c) (2000), a former senior official of the Executive Branch, in the year after his departure, may not communicate with, or appear before, his former agency "on behalf of any other person (except the United States)," in connection with a matter on which he seeks official action. You have asked whether a former senior official of the Securities and Exchange Commission ("Commission") communicating with the Commission on behalf of the Public Company Accounting Oversight Board ("Board") during the year after his service at the Commission ends would be acting "on behalf of . . . the United States."[1] We believe that former senior official would not be communicating on behalf of the United States and that the statute therefore would apply to bar such a communication.

## I.

The Sarbanes-Oxley Act, 15 U.S.C. § 7211 (Supp. IV 2004), created the Board "to oversee the audit of public companies that are subject to the securities laws, and related matters," *id.* § 7211(a). To carry out that responsibility, the Board, among other things, is "to register public accounting firms that prepare audit reports for issuers" under the Act, *id.* § 7211(c)(1); "establish or adopt . . . auditing, quality control, ethics, independence, and other standards relating to the preparation of audit reports," *id.* § 7211(c)(2); "conduct inspections of registered public accounting firms," *id.* § 7211(c)(3); "conduct investigations and disciplinary proceedings concerning, and impose appropriate sanctions where justified upon, registered public accounting firms and associated persons of such firms," *id.* § 7211(c)(4); "perform such other duties or functions as the Board (or the

---

[1] Letter for Steven G. Bradbury, Acting Assistant Attorney General, Office of Legal Counsel, from Brian G. Cartwright, General Counsel, Securities and Exchange Commission (Apr. 14, 2006) ("Commission Letter"). In accordance with the practice of our Office, the Commission has agreed to be bound by our opinion in this matter. *Id.* at 1. We do not address the status of the Board for any other purpose, including under any provision of the United States Constitution. *See generally Status of National Veterans Business Development Corporation*, 28 Op. O.L.C. 70, 72 (2004).

Commission, by rule or order) determines are necessary or appropriate to promote high professional standards among, and improve the quality of audit services offered by, registered public accounting firms and associated persons thereof, or otherwise to carry out [the] Act," *id.* § 7211(c)(5); and "enforce compliance with [the] Act, the rules of the Board, professional standards, and the securities laws relating to the preparation and issuance of audit reports and the obligations and liabilities of accountants with respect thereto, by registered public accounting firms and associated persons thereof," *id.* § 7211(c)(6).

The Commission exercises substantial "oversight and enforcement authority" over the Board. *Id.* § 7217(a). For example, after consultation with the Chairman of the Board of Governors of the Federal Reserve System and the Secretary of the Treasury, the Commission appoints all five members of the Board. *Id.* § 7211(e)(4). The Commission has the power to approve the Board's rules of operation and administration, *id.* § 7211(g), and must approve (or modify) the Board's rules for public accounting firms before they can take effect, *id.* § 7217(b). The Commission also may "enhance, modify, cancel, reduce, or require the remission of a sanction imposed by the Board upon a registered public accounting firm or associated person thereof." *Id.* § 7217(c)(3). The statute nonetheless declares that the Board

> shall not be an agency or establishment of the United States Gov- ernment . . . . No Member or person employed by, or agent for, the Board shall be deemed to be an officer or employee of or agent for the Federal Government by reason of such service.

*Id.* § 7211(b).

The present question concerns the status of the Board for purposes of 18 U.S.C. § 207(c). Under that provision, a former senior employee of an agency is criminal- ly liable if

> within 1 year after the termination of his or her service or employ- ment . . . [he or she] knowingly makes, with the intent to influence, any communication to or appearance before any officer or employee of the department or agency in which such person served within 1 year before such termination, *on behalf of any other person (except the United States)*, in connection with any matter on which such per- son seeks official action by any officer or employee of such depart- ment or agency.

(Emphasis added).[2] Because "[t]he nature of the close working relationship between the Commission and the [Board] necessitates frequent contact between

---

[2] Section 207(c) identifies covered senior officials by reference to salary level or to the authority under which they have been appointed. 18 U.S.C. § 207(c)(2). Although the Commission Letter does

the Commission's staff and [Board] members and staff," Commission Letter at 4, if the Board is not considered "the United States" for purposes of section 207(c), a former senior Commission official "could not, as a practical matter, accept an appointment as a member of the [Board] or its senior staff," *id.*

## II.

Your question concerns former "Commissioners or staff members who leave the Commission to accept a position with the [Board]" and communicate with the Commission as part of their official functions. Commission Letter at 1, 3. We believe that such a former official would not communicate "on behalf of . . . the United States" under 18 U.S.C. § 207(c).

### A.

We have previously concluded that communications "on behalf of" a person under section 207 "include only communications that are made by one who is acting as an agent or attorney, or in some other representational capacity for another." Memorandum for Michael Boudin, Deputy Assistant Attorney General, Antitrust Division, from J. Michael Luttig, Assistant Attorney General, Office of Legal Counsel, *Re: Application of 18 U.S.C. § 207(a) to Pardon Recommendation Made by Former Prosecutor* at 6 (Oct. 17, 1990) ("*Pardon Recommendation*").A former senior official who works at the Board and communicates in his official capacity to the Commission would do so as the Board's agent: "'Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and the consent of the other so to act.'" *Id.* (quoting Restatement of the Law (Second) of Agency § 1 (1958) (emphasis omitted)); *accord* Restatement of the Law (Third) of Agency § 1.01 (2006). The applicability of section 207(c) thus turns on whether, as an agent of the Board, a former employee of the Commission would act as an agent of "the United States." The statute answers that question in the negative.

The Sarbanes-Oxley Act provides that "[n]o member or person employed by, or agent for, the Board shall be deemed to be an officer or employee of or *agent* for the Federal Government by reason of such service." 15 U.S.C. § 7211(b) (emphasis added). That provision, we believe, indicates that a person employed by or acting as agent for the Board is not acting "on behalf of . . . the United States" under section 207(c). Title 18 does not have a general definition of "the United States," except "in a territorial sense," 18 U.S.C. § 5 (2000), but section 207(c) itself suggests the meaning in the present context. Section 207(c) states that its

---

not ask for us to address the lifetime ban under 18 U.S.C. § 207(a)(1) for specific-party matters in which a former officer or employee participated personally and substantially or the two-year ban for specific-party matters pending under the official responsibility of the former officer or employee, we note that both provisions also use the "on behalf of . . . the United States" language.

restrictions apply to certain former "officer[s] or employee[s] of the executive branch of the United States." The reference to the Executive Branch of "the United States" plainly is to the Executive Branch of the federal government. When the section later refers to a communication "on behalf of . . . the United States," the "normal rule of statutory construction" would call for the conclusion that "identical words used in different parts of the same act are intended to have the same meaning," *Sorenson v. Sec'y of Treasury*, 475 U.S. 851, 860 (1986), and this principle is especially compelling here because the identical words appear in the same sentence, *see Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 448 (2006).[3] *See also* 18 U.S.C. § 207(b) (provision restricting a former employee's activities with respect to trade or treaty negotiations applies to a former employee "who personally and substantially participated in any ongoing trade or treaty negotiation on behalf of the United States within the 1-year period preceding the date on which his or her service or employment with the United States terminated"). Because a communication "on behalf of the United States" would thus have to be on behalf of the federal government, the statement that the Board's personnel are not "agent[s] for the Federal Government" negates precisely that they act "on behalf of . . . the United States" within the meaning of the statute.

The interests of the Board may well coincide with those of the United States. The Board is a creation of the United States government and is subject to the control of the Commission in significant respects. Nevertheless, section 207 can apply even when a former official is advocating the same position that is taken by his former agency. "'[A] former employee does not act on behalf of the United States . . . merely because the United States may share the same objective as the person whom the former employee is representing.'" *18 U.S.C. § 207 and the Government of Guam*, 20 Op. O.L.C. 326, 329 (1996) (quoting Office of Government Ethics, *Summary of Post-Employment Restrictions of 18 U.S.C. Section 207*, at 4 (Nov. 4, 1992)). Here, although the Board, the Commission, and more generally the United States may have the same interests, Congress has declared that the Board's personnel are not "agent[s] for the Federal Government," and, given this declaration, it does not matter if the Board's personnel advance interests that match those of other entities of the federal government. The statute, in other words, distinguishes between the Board and the United States and treats Board personnel as speaking on behalf of the Board.

---

[3] The covered persons are former officers and employees "of the executive branch of the United States," 18 U.S.C. § 207(c), but communications by a former officer or employee are allowed if they are "on behalf of . . . the United States," not just the Executive Branch, Office of Government Ethics, *Summary of Post-Employment Restrictions of 18 U.S.C. § 207*, Informal Advisory Mem. 04x11a, at 5 (July 29, 2004) (attachment to Office of Government Ethics, *Summary of 18 U.S.C. § 207*, Informal Advisory Mem. 04x11 (July 29, 2004)) (available at http://www.oge.gov/OGE-Advisories/Legal-Advisories/Legal-Advisories/, last visited Aug. 12, 2014) ("2004 Summary") (communications on behalf of Congress are permitted). This difference does not affect the meaning of "the United States," which in both cases refers to the federal government.

### B.

The conclusion that communications on behalf of the Board are not "on behalf of . . . the United States" is consistent with an earlier opinion of our Office, *Applicability of 18 U.S.C. § 207(a) to the Union Station Development Corporation*, 12 Op. O.L.C. 84 (1988) ("*Union Station*"). There, we stated that we have "looked to the definition of 'agency of the United States' in 18 U.S.C. § 6 to determine if an entity should be regarded as the United States for the purposes of the conflict of interest laws." *Id.* at 84. We have some doubt that this characterization is entirely correct; the opinions cited in *Union Station* may be read to interpret the term "agency" or "agency of the United States," not "United States" itself. Nevertheless, even if that line of opinions is applicable, it is consistent with the conclusion we reach here. Section 6 states that

> [t]he term 'agency' includes any department, independent establishment, commission, administration, authority, board or bureau of the United States or any corporation in which the United States has a proprietary interest, unless the context shows that such term was intended to be used in a more limited sense.

18 U.S.C. § 6. We have read section 6 as "establish[ing] a presumption that a governmental entity is an agency for purposes of a given offense, including the conflict of interest statutes." *Application of 18 U.S.C. § 205 to Union Organizing Activities of Department of Justice Employee*, 5 Op. O.L.C. 194, 195 (1981) ("*Organizing Activities*").

Here, however, the statute conclusively rebuts that presumption. Section 7211 states explicitly that the Board "shall not be an agency or establishment of the United States Government." 15 U.S.C. § 7211(b). In *Lebron v. National Railroad Passenger Corp.*, 513 U.S. 374 (1995), the Supreme Court concluded that a statute providing that Amtrak "'will not be an agency or instrumentality of the United States Government,'" *id.* at 391 (quoting 84 Stat. 1330 (1970)), was "assuredly dispositive of Amtrak's status as a Government entity for purposes of matters that are within Congress's control." *Id.* at 392. Similarly, Congress's declaration that the Board is not "an agency or establishment of the United States Government" is dispositive of its status as an agency under the conflict of interest laws.

When a statute has not expressly addressed whether an entity is an agency or establishment of the United States, we sometimes have examined such factors as the entity's "functions, financing, control, and management." *Union Station*, 12 Op. O.L.C. at 86.[4] But the use of a multi-factor test is not appropriate where, as

---

[4] A 1948 letter of the Attorney General concluded that the Panama Railroad Company was an agency of the United States for purposes of the conflict of interest laws, Letter for the Secretary of the Army, from Tom C. Clark, Attorney General (Dec. 2, 1948), but the statute in that case provided that the company was "an agency or instrumentality of the United States," Pub. L. No. 80-807, 62 Stat.

here, Congress has explicitly determined that an entity is not an agency of the United States for purposes within Congress's control.

The conclusion that the Board is not "the United States," we believe, squares with the Sarbanes-Oxley Act's own post-employment provision. Under 15 U.S.C. § 7211(g)(3), the Board is to

> establish ethics rules and standards of conduct for Board members and staff, including a bar on practice before the Board (and the Commission, with respect to Board-related matters) of 1 year for former members of the Board, and appropriate periods (not to exceed 1 year) for former staff of the Board.

This provision does put the Board into a position similar to that of an agency of the federal government, but this treatment is entirely consistent with the view that the Board is not a federal agency for purposes of the general conflict of interest laws, including 18 U.S.C. § 207(c), and thus requires its own conflict of interest provision. And although the provision, by limiting the practice before the Commission by former Board members and staff, might be read to suggest that, for conflict of interest purposes, the Board should be equated with the Commission, the bar on practice before the Commission also could reflect a concern that confidential information involving regulated entities might give former Board members and staff an unfair advantage. *Cf.* Bayless Manning, *Federal Conflict of*

---

1075, 1076 (1948). In 1963, we found that the Federal National Mortgage Association ("Fannie Mae") was an agency of the United States under 18 U.S.C. § 431 (1958). *See* Memorandum for Joseph F. Dolan, Assistant Deputy Attorney General, from Norbert A. Schlei, Assistant Attorney General, Office of Legal Counsel (Dec. 18, 1963) ("*Fannie Mae*"). In that instance, the statute made Fannie Mae "a constituent agency of the Housing and Home Finance Agency," 12 U.S.C. § 1717 (1958), and Fannie Mae's obligations were not obligations of the United States or "of any agency or instrumentality thereof *other than [Fannie Mae]*," *id.* §§ 1719(b), 1721(b) (emphasis added); the "other than" language suggested that Fannie Mae itself was an agency or instrumentality of the government. Although we did not refer to these provisions, we noted that the Housing and Home Finance Administrator was the Chairman of Fannie Mae's Board. *Fannie Mae* at 6, 8. In *Organizing Activities*, we determined that the Office of the Architect of the Capitol was an "agency." Noting that the definition in 18 U.S.C. § 6 "in effect, establishes a presumption that a governmental entity is an agency for purposes of a given offense, including the conflict of interest statutes," we did not then identify anything that might have rebutted that presumption. 5 Op. O.L.C. at 195. In *Union Station*, the corporation whose status was in question was "simply the vehicle created by that Department to accomplish [a] congressional mandate" imposed upon the Department of Transportation under 40 U.S.C. §§ 801–819 (1988), and the statute was silent on the status (indeed on the existence) of that corporation. 12 Op. O.L.C. at 86; *see also Applicability of 18 U.S.C. § 207 to the General Accounting Office*, 3 Op. O.L.C. 433 (1979) (concluding that section 207 applies to former employees of the General Accounting Office, which, under the then-applicable statute, was an "establishment of the Government"). Similarly, we concluded that the National Veterans Business Development Corporation was an "agency" under 31 U.S.C. § 9102. The statute creating that entity had "no . . . express disclaimer" of its status as an agency. *National Veterans Business Development Corporation*, 28 Op. O.L.C. at 72.

*Interest Law* 179 (1964) (stating that concern about misuse of inside information is one reason for federal post-employment restrictions).[5]

Concededly, as a matter of policy, it may make little sense to treat the Board as outside the government for purposes of the conflict of interest laws. As the Commission Letter points out, this understanding of section 207(c) has the effect of excluding from appointment to the Board a "uniquely qualified pool of candidates"—recently departed former high-level officials of the Commission. Commission Letter at 4. Given the "unique statutory relationship between the [Board] and the Commission," there may be a strong policy argument that, for purposes of the conflict of interest laws, the Board should be treated as an agency of the government. On the other hand, the Board in several respects is similar to self-regulatory organizations like the National Association of Securities Dealers ("NASD"), "a private body empowered by the Commission to oversee the activities of broker-dealers." *United States v. Frith*, 461 F.3d 914, 916 (7th Cir. 2006). Although the Commission's authority to oversee the Board is even greater than its authority to oversee the NASD, the Sarbanes-Oxley Act declares that several provisions of the securities laws relating to the Commission's oversight powers "shall apply to the Board as fully as if the Board were a 'registered securities association.'" 15 U.S.C. § 7217(a), (b)(4), (b)(5), (c)(2). The statute, to this extent, treats the Board like the private NASD, which we understand is the only "registered securities association." Congress may have wished to treat the Board as private for all statutory purposes, and section 7211(b) indicates that this is what Congress chose to do. The unequivocal declaration that "[n]o member or person employed by, or agent for, the Board shall be deemed to be an officer or employee of or agent for the Federal Government by reason of such service" and that the Board "shall not be an agency or establishment of the United States Government," 15 U.S.C. § 7211(b), determines our answer.

STEVEN G. BRADBURY
*Acting Assistant Attorney General*
*Office of Legal Counsel*

---

[5] Moreover, if the Board were an agency of the United States, a highly paid official of the Board who left the government would be subject to the one-year cooling-off period under section 207(c), and practice before the Board by such a former official in the year after his or her departure would violate the criminal provision. The administrative rule, at least to this extent, would then seem superfluous. *See* 2004 Summary, *supra* note 3, at 8.