In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-1347

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

JIN HUA DONG,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08 CR 371-2—**James B. Zagel**, *Judge.*

ARGUED FEBRUARY 23, 2012—DECIDED MARCH 27, 2012

Before FLAUM and TINDER, *Circuit Judges*, and SHADID, *District Judge.**

SHADID, *District Judge.* Jin Hua Dong pled guilty to participating with his co-defendants in a scheme to commit bank fraud by knowingly obtaining multiple equity lines of credit secured by the same property. He

___

* The Honorable James E. Shadid, United States District Court for the Central District of Illinois, sitting by designation.

was sentenced to a term of 51 months and three years of supervised release, as well as ordered to pay $337,250 in restitution. On appeal, Dong challenges only the propriety of the restitution award, arguing that he cannot be ordered to pay restitution for the relevant conduct of other co-defendants. We disagree that this is the case.

## I. BACKGROUND

In April 2008, Dong was in the United States illegally when he traveled from Los Angeles to Chicago to meet with Yoon Sae Kim. Dong agreed to help Kim obtain home equity lines of credit (HELOC) for properties to be purchased to serve as collateral for the loans. On April 3, 2008, at the direction of Kim, Dong purchased a single-family home located at 4066 South Lake Park, Chicago, Illinois, for $675,000 for the purpose of using the property to obtain multiple HELOC loans. He made a $200,000 down-payment on the property after receiving the money from Kim. Dong then helped Kim submit a mortgage application to Countrywide Bank to finance the purchase of the Lake Park property. The application contained several false statements made with the intent to induce Countrywide to approve the loan, including: (1) that Dong was the true purchaser when in fact he was a nominee purchaser for Kim; (2) that Dong intended to occupy the property; and (3) that Dong had certain employment, income, and assets. Countrywide ultimately approved the mortgage loan for $472,250.

Dong simultaneously applied for HELOC loans from National City Bank and LaSalle Bank, both secured by

the Lake Park property. In doing so, he concealed the other loan applications from the lenders, creating the appearance that each lender was the only lender providing a HELOC loan on the property. These applications contained false representations as to Dong's citizenship, social security number, employment history, and salary. In the case of the application to LaSalle Bank, the application also contained a copy of the original purchase mortgage and settlement statement that had been altered to falsely reduce the amount of the original mortgage on the property by $300,000. On May 5, 2008, Dong accompanied Kim and Sung Ar Kim to LaSalle Bank for the closing on the $350,000 line of credit secured by the Lake Park property. Dong was scheduled to receive the funds from the closing on May 9, 2008, but no funds were ultimately received because he was arrested prior to the disbursement. The Lake Park property was sold in December 2009 for $135,000, resulting in a $337,250 loss to Countrywide.

Dong pled guilty to Counts Seven and Eight of the Indictment, which charged him with engaging in a scheme with his co-defendants to defraud financial institutions and to obtain monies and funds owned by and under the custody and control of the financial institutions by means of materially false and fraudulent pretenses, representations, promises, and omission in violation of 18 U.S.C. § 1344.

Prior to sentencing, the Probation Office issued a presentence report calculating an advisory guideline range of 51 to 63 months and a criminal history category

of I. The total offense level was projected to be 24 based in part on a 16-level increase as a result of a statement in Dong's Plea Declaration that the total intended loss was between $1,000,000 and $2,500,000 given the $472,250 mortgage from Countrywide and the $784,900 in HELOC loans requested from National City and LaSalle Bank, less the $135,000 obtained from the sale of the Lake Park property.

At sentencing, Dong seized upon the presentence report's characterization of the Countrywide mortgage as "relevant conduct" and argued that he could not be ordered to pay restitution for that amount. He also objected that the $337,250 loss to Countrywide was overstated given the significant difference between the purchase price of $675,000 and the sale price two years later of $135,000. Excluding this amount, Dong argued, would result in an offense level increase of only 14 levels and an advisory guideline range of 41 to 51 months. On January 14, 2011, the district court appears to have accepted Dong's argument and sentenced him as if there was only a 14-level increase and an offense level of 22 rather than 24. Dong was sentenced to a term of 51 months in prison on each of Counts Seven and Eight to be served concurrently followed by three years of supervised release. He was also found jointly and severally liable with his co-defendants for $337,250 in restitution, which represents the $472,250 mortgage from Countrywide, minus the $135,000 recovered when the property was sold.

On appeal, Dong challenges only the restitution portion of his sentence. Specifically, he contends that

the district court erred in ordering restitution for relevant conduct to which he did not plead guilty, as the two transactions to which he pled guilty resulted in no actual loss. He further asserts that the restitution amount exceeds the actual loss caused by his jointly-undertaken criminal activity and was not reasonably foreseeable to him.

## II. DISCUSSION

The district court's interpretation of the Sentencing Guidelines is reviewed de novo, and its factual findings are reviewed for clear error. Accordingly, the challenged calculation of the restitution amount in this case is reviewed for clear error and will be reversed "only if the district court used inappropriate factors or did not exercise discretion at all." *United States v. Frith*, 461 F.3d 914, 919 (7th Cir. 2006).

Initially, the Court notes that the argument regarding the amount of the Countrywide mortgage being included in the loss calculation is different from the argument that the $337,250 figure was overstated because the sale price was unreasonably low. In fact, Dong's Plea Declaration also included a projected sentencing estimate that contained an offense level increase of 16 for an intended loss between $1,000,000 and $2,500,000, which encompassed amounts for the initial purchase mortgage from Countrywide and the two HELOC loans from National City and LaSalle Bank. By admitting that the Countrywide mortgage was properly included in the loss computation, Dong essentially relin-

quished his right to make this argument as a tactical choice in favor of the stronger argument regarding over-statement of loss. Failure to raise this argument before the district court results in the waiver of that argument on appeal. *United States v. Murray*, 395 F.3d 712, 717 (7th Cir. 2005).

Even assuming *arguendo* that the argument has not been waived, the restitution award does not support a finding of clear error. Dong is correct that a loss to Countrywide was not specifically set forth in Counts Seven and Eight of the Indictment. However, he fails to acknowledge that fraud causing a loss to Countrywide was expressly stated in the description of the scheme contained in paragraphs 1 through 67 of Count One, which was incorporated by reference in Counts Seven and Eight. Paragraphs 56 and 57 of the Indictment allege that part of the scheme involved Dong making false statements to Countrywide in order to obtain the initial purchase mortgage for the Lake Park property, which was then used as collateral to support fraudulent equity loans.

Moreover, in his Plea Declaration, Dong specifically admitted:

> Beginning no later than in or around April, 2008, and continuing until at least on or about May 9, 2008, in the Northern District of Illinois, Eastern Division, defendant participated with his co-defendants Yoon Sae Kim, Sung Ar Kim, Myung Ja Pak, and Yoo Jung Lee, in a scheme to defraud certain financial institutions and to obtain monies and funds owned by

and under the custody and control of certain financial institutions by means of materially false and fraudulent pretenses, representations, promises and omissions.

In or around April, 2008, defendant JIN HUA DONG met with Yoon Sae Kim in the Chicago area. Defendant JIN HUA DONG understood at the time that applying for more than one loan on a single property without informing each bank of this was illegal . . . .

On or about April 3, 2008, defendant JIN HUA DONG purchased a single-family home located at 4066 South Lake Park, Chicago, Illinois, (hereinafter "the Lake Park property") for $675,000 for the purpose of using it fraudulently to obtain multiple HELOC loans. Defendant JIN HUA DONG purchased and financed the Lake Park property at the direction and under the control of Yoon Sae Kim. Defendant JIN HUA DONG made a down-payment of approximately $200,000 on the Lake Park property. Defendant JIN HUA DONG had received the $200,000 down-payment from Yoon Sae Kim.

Defendant JIN HUA DONG helped to facilitate Yoon Sae Kim's submitting of a mortgage loan application to Countrywide Bank to finance the purchase of the Lake Park property which falsely represented that JIN HUA DONG was the true purchaser of the property. In fact, defendant JIN HUA DONG was acting as nominee purchaser for Yoon Sae Kim. In addition, the mortgage loan application

for the Lake Park property was fraudulent in that it contained false statements, including statements regarding the purchaser's intent to occupy the property, employment, income and assets, which were intended to induce Countrywide Bank to approve a mortgage loan. Countrywide Bank ultimately approved the mortgage loan.

Accordingly, Dong clearly pled guilty to the conduct that resulted in the actual loss of $337,250 to Countrywide, and his assertion that he is being held responsible for an amount of restitution that is based on "relevant conduct" or conduct that was beyond the scope of his plea agreement is plainly incorrect. As set forth above, Dong's Plea Declaration also contained a projected sentencing estimate of an intended loss between $1,000,000 and $2,500,000, which included amounts for the initial purchase mortgage from Countrywide. This constitutes an affirmative acknowledgment by Dong that the Countrywide mortgage was properly included in the loss calculation.

Dong contends that the district court failed to make the findings required by U.S. Sentencing Guideline § 1B1.3(a)(1)(B), which requires a determination of the scope of the jointly undertaken criminal activity and findings as to whether the conduct was in furtherance of that joint criminal activity and the foreseeability of the conduct. However, Sentencing Guideline § 1B1.3 Application Note 2 makes clear that this requirement applies only where the acts in question were not committed by the defendant but rather were solely the acts

of others. The record in this case, as discussed above, refutes Dong's suggestion that the Countrywide mortgage loss was "relevant conduct" arising from the acts or omissions of others rather than conduct that constituted part of his offense of conviction. As such, his reliance on Sentencing Guideline § 1B1.3(a)(1)(B) is misplaced.

Finally, Dong was sentenced within the precise guide-line range that he argued to be applicable. The district court agreed that the loss amount was overstated and sentenced Dong as if he had an offense level of 22 instead of 24, which coincides with a loss of between $400,000 and $1,000,000 based on the HELOC loans alone. Accordingly, he has failed to demonstrate any plain error or actual harm as a result of the sentence imposed.

### III.  CONCLUSION

For the reasons stated herein, we AFFIRM Dong's sentence.