In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-3959

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

LASHAWN LITTRICE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08 CR 513-1—**Rebecca R. Pallmeyer**, *Judge.*

ARGUED SEPTEMBER 21, 2011—DECIDED JANUARY 31, 2012

Before EASTERBROOK, *Chief Judge,* and TINDER and
HAMILTON, *Circuit Judges.*

TINDER, *Circuit Judge.* A jury convicted LaShawn
Littrice of fourteen counts of willfully aiding and
assisting in the preparation of tax returns containing
materially false and fraudulent claims, including phony
medical and business expenses and charitable donations.
The evidence at trial proved a tax loss of $31,849. At
sentencing, the government proposed a tax loss figure

of $1.6 million by identifying 662 returns Littrice prepared that contained materially fraudulent or false claims similar to those proven at trial and eliminating the contested returns. After multiple hearings and considering Littrice's evidence, the district court found that the government proved by a preponderance of the evidence that Littrice's relevant conduct included the material falsifications in the group of 662 returns that went uncontested by the taxpayers. Yet the court discounted the loss amount to the $400,000- to $1-million range to compensate for a possible selection bias in a sample of 100 of the returns provided to Littrice to examine as part of her defense.

On appeal, Littrice seeks dismissal of the indictment for violation of her statutory speedy trial rights and alternatively a remand for resentencing on various matters including the district court's tax loss calculation. We cannot consider Littrice's speedy trial claim because she did not ask the district court to dismiss the indictment before trial. As for her sentencing claims, Littrice has not persuaded us that the district court's tax loss figure was outside the realm of permissible computations or that the court otherwise erred or abused its discretion in calculating Littrice's sentence. We affirm.

## I. Factual Background

Littrice owned and operated Diamond Accounting & Financial Services, Inc. (Diamond) from 1999 to 2006. From 2003 to 2006, Littrice prepared some 4,385-plus tax

returns. In early 2005, an Internal Revenue Service (IRS) special agent became suspicious that some items on returns she prepared appeared inflated or false. The agent developed a cover story and made an appointment at Diamond. Wired with a secret recording device, the agent posed in Littrice's offices as a single, wage-earning taxpayer with one dependent, and no deductions. The agent's fictional tax information showed that she owed the government a little more than $1,200. The agent filled out an information sheet and then met with Littrice for about nine minutes. They discussed the agent's tax return, education expenses, and job. Littrice initially told the agent that she "was upside down" and owed taxes. But by the end of the meeting, Littrice informed the agent that she would receive a refund. Littrice accomplished this by falsely reporting $6,998 in charitable donations, $7,214 in business expenses, $898 in education credits, and $2,000 in qualified expenses. The agent did not provide Littrice with any of these figures or supporting documents but qualified for an $808 refund that resulted in a $578 check to the IRS agent after Littrice subtracted her fee.

Littrice was indicted on June 25, 2008, on sixteen counts of willfully aiding and assisting in the preparation of tax returns containing materially false and fraudulent information. *See* 26 U.S.C. § 7206(2). Littrice pleaded not guilty, the government dismissed Counts 15 and 16, and the case eventually went to trial. The government presented evidence of returns Littrice prepared to get her clients improper refunds (minus a preparer's fee)

by fabricating various credits and expenses and misrepresenting filing statuses. The evidence demonstrated a pattern of Littrice conjuring up nonexistent charitable contributions, job expenses, and medical expenditures. None of the taxpayers provided Littrice with the false figures she used or any documentation to support them or otherwise suggested that the bogus numbers were anything other than a product of Littrice's deceit. So none of the credit or deduction figures discussed below were provided to Littrice by the taxpayers or had any basis in fact.

For Larry Collins, Littrice reported charitable gifts of $6,938 and job expenses of $7,529, resulting in a $6,330 refund for 2002. For 2003, Littrice reported $5,342 in medical expenses, $8,574 in job expenses, and $8,172 in charitable contributions. Collins received a $7,497 refund for that year.

Littrice prepared separate individual tax returns for spouses Carla and Thomas Knighton in which she falsely listed Carla and Thomas as single rather than married. For Carla's 2003 return, Littrice reported $7,812 in medical expenses, $7,971 in charitable contributions, $5,917 in job expenses, and $10,249 in real estate losses. Carla received a $3,492 refund. For 2004, Littrice reported $6,057 in charitable contributions and $12,681 in real estate losses, netting Carla a $5 refund. For 2005, Littrice reported $3,809 in charitable contributions and Carla received a $1,044 refund. Littrice performed similar deceptions for Thomas. For 2003, Littrice reported $7,951 in medical expenses, $7,444 in charitable

contributions, and $7,713 in job expenses. He received a $4,464 refund. In 2004, Littrice reported $6,266 in charitable contributions and $7,577 in job expenses, resulting in Thomas receiving a $5,265 refund. In 2005, Littrice reported $4,712 in charitable contributions and $5,127 in job expenses. After filing the 2005 return, the IRS sent Thomas a notice that he was being audited.

Littrice prepared Annie Plane's 2002 and 2003 returns. For 2002, Littrice reported $8,690 in charitable contributions, $8,917 in job expenses, and $12,335 in net business losses, resulting in her receipt of a $4,337 refund. For 2003, Littrice reported $9,229 in charitable contributions, $6,915 in job expenses, and $13,933 in net business losses. She received a $5,077 refund.

Littrice prepared Tekeela and Leslie Ross's 2003 and 2004 individual tax returns. Even though they were married and lived in a single household, Littrice falsely listed each of them as heads of households. For Tekeela's 2003 return, Littrice reported $4,800 in child and dependent care expenses and a $2,847 earned income credit. She received a $4,799 refund. For Tekeela's 2004 return, Littrice reported $6,000 in child and dependent care expenses and a $3,366 earned income credit, producing a $4,569 refund. For Leslie's 2003 return, Littrice reported $4,799 in charitable contributions, $3,219 in job expenses, and $2,400 in child and dependent care expenses. He received a $2,940 refund. For Leslie's 2004 return, Littrice reported $5,187 in charitable contributions, $4,718 in job expenses, and $3,000 in child and dependent care expenses, giving him a $2,826 refund.

The jury found Littrice guilty on all fourteen counts. Littrice moved for a judgment of acquittal and a new trial. The district court denied the motion. Her sentencing hearing, which involved several court sessions, began on November 16, 2010. A presentence report (PSR) calculated a base offense level of 22 on a tax loss of $1 million to $2.5 million. To calculate the tax loss, the PSR identified 662 of the returns Littrice prepared between 2003 and 2005 that, according to IRS correspondence audits, contained fraudulent deductions similar to the fourteen returns introduced into evidence at trial. The audits revealed that the taxpayers owed about $1.8 million. To weed out returns not attributable to Littrice's relevant conduct, the PSR narrowed down the returns to the 93% where taxpayers admitted or did not contest the falsity of the claimed expenses and contributions. The PSR calculated a total intended loss of $1.6 million after excluding the 7% of the returns that were contested or where no tax was due.

Littrice argued that the district court should only hold her accountable for the $31,849 in tax loss proven at trial. The court rejected her suggestion that the government had "an obligation to put a witness on" to say that Littrice was "the person who was responsible for adding in that deduction" for every single return. Yet the court noted that the government had "the burden of showing by a preponderance of the evidence that certain other conduct is relevant conduct." The court considered the record's magnitude and that the PSR only selected a narrow group of returns and excluded contested audits and indicated that the proposed method for calcu-

lating tax loss was reasonable. The court said that Littrice would have the opportunity to review the returns and "if there is some kind of a pattern of miscalculation here, or even one miscalculation . . . [t]hat itself might raise suspicion about . . . the whole process." The court continued the sentencing hearing to December 7 so Littrice could prepare documents and witnesses to rebut the PSR's tax loss figure. The court emphasized that Littrice was entitled to review all 662 audit files. The government had already provided Littrice with 100 of the 662 audit files for her review. The judge then recessed the sentencing hearing to resume it several weeks later.

Unfortunately, Littrice failed to appear at the continuation of her sentencing hearing so the district court issued a warrant for her arrest. Littrice was arrested the next day and the hearing resumed about a week later. At the resumed hearing, the government supported the PSR's relevant conduct finding by citing to interviews with about twenty people conducted as part of the criminal investigation (about seven of these people testified at trial), another ten interviewed separately, and taxpayer statements that appeared in the audit files indicating that the taxpayers didn't provide the false information. The court found that the government met its burden of "showing that there was conduct similar to what happened in this case with respect to other taxpayers." Littrice called five witnesses to rebut the relevant conduct finding. The court again recessed the sentencing to resume it the following day. At that final session of the sentencing, the court stated that because

it was concerned that the 100 returns provided to Littrice "were not necessarily random," it would reduce the tax loss figure to the $400,000 and $1 million range as "the most conservative determination." The court found that the government established by a preponderance "that other tax returns prepared by this defendant were infected with the same kinds of phony claims that we heard about at the trial," noting that the claims were of similar type and size. In a written sentencing addendum, the district court stated that Littrice's "pattern" of manufacturing phony deductions for her clients "was obvious from the testimony of several of her clients and from that of the undercover officer." The court found that Littrice's witnesses failed to discredit the government's calculation and that Littrice's various accounts—that she was not dishonest, her clients were or that the deductions were in fact valid, the IRS was just wrong—were "unlikely" and "implausible" based on the false deductions' similar nature and size and that nearly all her clients wouldn't simply accept the audit results if the deductions were in fact legitimate.

The court's modified tax loss figure produced a base offense level of 20 and, with Littrice's Category I criminal history, a guideline range of 33 to 41 months. A statement of correction to the PSR increased Littrice's base offense level to 22 because she was in the business of preparing and assisting in the preparation of tax returns, U.S.S.G. § 2T1.4(b)(1), and proposed a guideline range of 41 to 51 months. But the district court appears to have disregarded this enhancement in basing its sentence on the 33- to 41-month range applicable to an offense level

of 20. In discussing the 18 U.S.C. § 3553(a) factors, the court considered in mitigation her family situation and in aggravation her education, financial, and intellectual abilities, knowledge of the tax code, duty to provide truthful information, and that her actions caused the IRS to audit her clients. The court noted Littrice's failure to appear for sentencing, how she denied the court's jurisdiction, that she obstinately asserted that she was an independent sovereign protected by the Eleventh Amendment, and her dishonesty to the court. The district court also stated that based on Littrice's training and profession, she would have known that the law requires truthful statements to the IRS. The court sentenced Littrice to 36 months' imprisonment on Count 1 followed by a consecutive 6 months' imprisonment on Counts 2-14 (running concurrently with each other) for a total of 42 months' imprisonment.

## II. Analysis

### A. The Speedy Trial Act

Littrice contends that the 664 days between her initial appearance and trial violated her statutory right to a speedy trial based on the Supreme Court's decisions in *Zedner v. United States*, 547 U.S. 489 (2006), *Bloate v. United States*, 130 S. Ct. 1345 (2010), and *United States v. Tinklenberg*, 131 S. Ct. 2007 (2011). Littrice acknowledges that she did not raise this issue at the district court but believes we may still review her speedy trial claim for plain error.

We cannot. Littrice never moved to dismiss the indictment on speedy trial grounds before trial and 18 U.S.C. § 3162(a)(2) expressly provides that "[f]ailure of the defendant to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere shall constitute a waiver of the right to dismissal under this section." We have "held that the failure to move for dismissal under the act constitutes a waiver, not merely a forfeiture." *United States v. Gearhart*, 576 F.3d 459, 462 (7th Cir. 2009). Our decision in *United States v. Hassebrock*, No. 10-3296, 2011 WL 5924412, at *3 (7th Cir. Nov. 22, 2011), disposes of the arguments Littrice advances in an attempt to justify plain error review of her speedy trial claim. Like Littrice, the *Hassebrock* defendant conceded that he did not raise a speedy trial objection in a motion to dismiss before trial but asked us to review his claim as merely forfeited. *Id.* We held that the Speedy Trial Act's "express terms" did not permit this interpretation. *United States v. Morgan* did note that we have reviewed speedy trial claims for plain error even though they were never presented to the district court. *See* 384 F.3d 439, 442 (7th Cir. 2004). But *Hassebrock* clarified that this statement merely summarized our prior inconsistent approach. 2011 WL 5924412, at *3. To Littrice's argument about *Zedner*, *Bloate*, and *Tinklenberg*, our decision in *Hassebrock* held that those cases never called "into question the well-established conclusion that failure to move to dismiss constitutes waiver under the Act." *Id.* Littrice's failure to move for dismissal below means she did not preserve her statutory speedy trial claim for appellate review. Given that Littrice does not raise a Sixth Amendment-based argument that her right

to a speedy trial was violated, we have nothing to review here.

### B. Consecutive Sentences

We ordinarily review a challenge to the imposition of consecutive sentences for an abuse of discretion, *United States v. O'Hara*, 301 F.3d 563, 571 (7th Cir. 2002), but Littrice did not raise this argument below so we review for plain error, *United States v. Martinez*, 289 F.3d 1023, 1027 (7th Cir. 2002). The jury convicted Littrice on fourteen counts, each carrying a maximum prison sentence of 36 months. *See* 26 U.S.C. § 7206(2). The district court imposed a 42-month sentence that was "just a hair above the guideline range." That total sentence, as noted, consisted of a period of incarceration of 36 months on Count 1 which was stacked consecutively to six-month concurrent sentences given for each of Counts 2 through 14. *See* U.S.S.G. § 5G1.2(d) (advising that "[i]f the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment").

Littrice argues the court violated *Apprendi v. New Jersey* by imposing consecutive sentences above the statutory maximum without making the appropriate findings. *See* 530 U.S. 466, 490 (2000) (holding that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and

proved beyond a reasonable doubt"). But the statutory maximum for *each* of Littrice's violations of 26 U.S.C. § 7206(2) was 36 months. Given that the jury found Littrice guilty of fourteen counts of violating that provision, her statutory maximum was 504 months. Because Littrice's sentence did not exceed this, there are no *Apprendi* issues for us to consider. *See, e.g.*, *United States v. Veysey*, 334 F.3d 600, 602 (7th Cir. 2003) (noting that a fact that merely moves the "sentence around within the statutory sentencing range need not be proved beyond a reasonable doubt").

**C.  The Tax Loss Calculation**

Littrice challenges the district court's finding that the government showed by a preponderance of the evidence that the uncontested returns audited by the IRS and prepared by Littrice "were infected with the same kinds of phony claims that we heard about at trial."

The loss amount must be determined "on the basis of the conduct of conviction and relevant conduct" that "must be criminal or unlawful conduct." *United States v. Schroeder*, 536 F.3d 746, 752 (7th Cir. 2008) (quoting *United States v. Frith*, 461 F.3d 914, 917 (7th Cir. 2006)). The government bore the burden of showing by a preponderance of the evidence "that the unpaid taxes discovered through the civil audit were attributable to" Littrice's "criminal or unlawful conduct." *Id.* The preponderance standard requires "that the fact-finder believe that the existence of a fact is more probable than the non-existence

of that fact." *Id.* at 753 (quoting *United States v. Smith*, 267 F.3d 1154, 1161 (D.C. Cir. 2001)). The figure does not need to be precise; "a reasonable estimate will suffice." *Id.* at 752 (citing U.S.S.G. § 2T1.1 cmt. 1). The court may adopt the PSR's facts "'as support for its findings and conclusions' if they 'bear sufficient indicia of reliability to support their probable accuracy.'" *Id.* (quoting *United States v. Taylor*, 72 F.3d 533, 543 (7th Cir. 1995)). The court "may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." *Id.* (quoting U.S.S.G. § 6A1.3(a)). We review for clear error. *Frith*, 461 F.3d at 917. "A finding of fact is clearly erroneous only if, based upon the entire record, we are left with the definite and firm conviction that a mistake has been committed." *United States v. Severson*, 569 F.3d 683, 689 (7th Cir. 2009) (internal quotations omitted). Littrice "must show that the district court's calculation was not only inaccurate but outside the realm of permissible computations." *United States v. Al-Shahin*, 474 F.3d 941, 950 (7th Cir. 2007) (internal quotations omitted).

Littrice contends that the district court clearly erred in adopting the PSR's finding that Littrice's relevant conduct included the returns she helped file (containing materially fraudulent or false deductions similar to those proven at trial) where the taxpayer-client admitted or failed to deny the IRS's determination that the returns contained false or fraudulent information. She maintains that this violated her right to due process.

After a close inspection of the record supporting the district court's finding, we disagree. A jury found beyond a reasonable doubt that Littrice made up, among others, fake deductions for business and educational expenses and charitable contributions on fourteen returns. The testimony from several of her clients and the undercover agent suggested a clear pattern of clients entering Littrice's office with taxable income that should have resulted in money being owed to the IRS, yet they were able to leave expecting refunds because of Littrice's knack for conjuring up fake information. The PSR identified 662 returns audited by the IRS and prepared by Littrice that featured materially false and fraudulent information similar to the fourteen returns at trial. The government cited interviews with about twenty people conducted as part of the criminal investigation, another ten interviewed separately, and taxpayer statements that appeared in the audit files indicating that the taxpayers didn't provide the false information. The district court did not clearly err in finding that this evidence supported a pattern of deception attributable to Littrice and that by excluding from the group of 662 returns all cases in which the taxpayer contested their audit or where no additional tax was due, the government proved by a preponderance of the evidence that the remaining returns reflected Littrice's relevant conduct. *Cf. United States v. Mehta*, 594 F.3d 277, 282 (4th Cir.) (holding that the district court did not err in finding "a 'pattern of numbers' reported for various deductions that was strikingly similar to the returns proven fraudulent at trial" established relevant conduct when

the taxpayers agreed to pay the assessments without protest), *cert. denied*, 131 S. Ct. 279 (2010). We agree with the district court that requiring the government to go through all the needles in the haystack of materially fraudulent and false returns Littrice helped prepare to determine her exact level of involvement would place a burden on the government beyond what the preponderance standard requires. The evidentiary burden for sentencing is not so cumbrous that it requires each individual taxpayer to attest in court that they were ignorant of the fraudulent and false information on the returns or that the phony numbers were solely the product of Littrice's imagination. Given the government's evidence of Littrice's involvement, we are not convinced that the district court clearly erred in finding that the government met its burden of proving that it was more probable than not that Littrice's relevant conduct included the uncontested returns from the group of 662.

Littrice argues that the district court erred in accepting the results of computerized searches of the universe of the returns she helped prepare to find those with like-kind flaws. But identifying returns that contained flaws similar to those proven at trial merely sorted the obviously fraudulent returns from other returns that were not as obviously fraudulent or perhaps not fraudulent at all. Littrice's argument either suggests that the government needed to go through all 4,385-plus returns she helped prepare and calculate a more comprehensive tax loss figure or select at random from the returns to approximate her relevant conduct.

Yet just as the government maintains significant pros-
ecutorial discretion, *cf. United States v. Sakellarion*, 649
F.3d 634, 640 (7th Cir. 2011), the government has discre-
tion in proposing which returns should be considered in
determining relevant conduct, *cf. United States v. Porter*,
23 F.3d 1274, 1279 (7th Cir. 1994) (noting that it is "an
entirely proper exercise of prosecutorial discretion to
present the evidence of the defendant's conduct to the
court as conduct relevant to his sentencing" even if
the evidence does not prove criminal conduct beyond
a reasonable doubt).

Littrice faults the district court for failing to determine
a more precise figure upon reducing the tax loss figure
from $1.6 million to a $400,000- to $1-million range. We
recognize that the district court's remedy for a possible
selection bias in the sample of returns the government
provided Littrice was somewhat rough, but we are not
convinced that its calculation was "outside the realm of
permissible computations." *Al-Shahin*, 474 F.3d at 950;
*cf. Mehta*, 594 F.3d at 282-84 (finding harmless error in
the district court's failure to alter its $1.125 million tax
loss finding to reflect for a possible selection bias
because a reasonable estimate of the tax loss would still
be above $1 million); *id.* at 284-85 & n.2 (Shedd, J., con-
curring in judgment) (finding no error because the
estimate remained reasonable). We distinguish this
case from *Schroeder*, where we noted problems with a
particular sentencing hearing involving a similar tax
loss calculation that, unlike this case, "was flawed from
the outset." *Schroeder*, 536 F.3d at 752. Quite unlike
Littrice's case, the district court in *Schroeder* announced

its loss finding at the beginning of the sentencing hearing and before the defendant had an opportunity to present an argument. This essentially forced the defendant to interrupt the district court, so we found it questionable whether the court gave the defendant's arguments "the due consideration they deserved." *Id.* at 753. Here, the district court withheld its tax loss finding until after Littrice had the opportunity to review and present evidence. In no sense did the district court pre-judge the tax loss figure as we found in *Schroeder*. Also unlike in *Schroeder*, where the district court confused the government's burden of proof with the evidence's admissibility and failed to hold the government to that burden, *id.* at 753-54, the district court here recognized the government's burden and properly weighed the evidence in making its relevant conduct finding.

We also noted in *Schroeder* that the defendant made a persuasive challenge against using civil audits "to attribute criminal liability," particularly where the audit only showed that the defendant's clients overstated their deductions but "did not purport to attribute responsibility for the improper deductions." *Id.* at 754. Yet quite unlike *Schroeder*, the district court here held multiple hearings and analyzed the government's evidence to determine whether the civil audits could support a finding by a preponderance that Littrice's unlawful conduct caused the underpayments. A district court may rely on civil audits, or any other information, to support a relevant conduct finding at sentencing so long as it considered whether it "has sufficient indicia

of reliability to support its probable accuracy." *Taylor*, 72 F.3d at 543; *see also Mehta*, 594 F.3d at 282 (finding "ample evidence" to support a finding that it was more probable than not that the defendant "fraudulently prepared the audited returns such that they could be used to calculate the tax loss"); *United States v. McLeod*, 251 F.3d 78, 82 (2d Cir. 2001) (finding it proper to use civil audit results to determine tax loss for relevant conduct). Here, the district court recognized that the audits did not attribute responsibility to Littrice on their own; instead, the court relied on the trial testimony of the taxpayers Littrice assisted, government interviews with dozens of taxpayers, statements in the audits that the taxpayer did not provide the false and fraudulent figures, and a pattern of materially false and fraudulent deductions of similar nature and size. Morever, as distinguished from *Schroeder*, the district court did not merely treat the false and fraudulent items as attributable to Littrice because she helped prepare the returns. The court weighed the evidence, gave Littrice an opportunity to review the evidence and respond, and made a considered decision that does not leave us with the definite and firm conviction that the district court made a mistake. *See Severson*, 569 F.3d at 689. Littrice's case is closer to *United States v. O'Doherty*, where we found that the district court reasonably relied on a PSR's calculation because its information was "sufficiently reliable," and the defendant "failed to meet his burden to draw the facts of the PSR sufficiently into question." 643 F.3d 209, 219 (7th Cir. 2011). Littrice does not appeal the district court's determination that her attempts to challenge the PSR's

relevant conduct finding produced "unlikely" and "im-
plausible" justifications to explain the large quantity
of returns containing materially fraudulent and false
deductions of a similar nature and size. Given that Littrice
failed to draw the PSR's facts sufficiently into question,
the district court was entitled to rely on the PSR's
relevant conduct finding.

### D.  Health and Family Circumstances

Littrice concedes that the district court acknowledged
her health and family circumstances but argues that
the district court failed to appropriately consider them
under 18 U.S.C. § 3553(a). Littrice's argument faces sub-
stantial hurdles. First, we routinely affirm sentences even
when a district court does not adequately address each
particular argument where it gives adequate reasons
to support its sentence. *United States v. Paige*, 611 F.3d
397, 398 (7th Cir. 2010). "A judge need not comment on
every argument the defendant raises." *United States v.
Miranda*, 505 F.3d 785, 792 (7th Cir. 2007). We review a
sentencing court's application of the § 3553(a) factors
"under the deferential abuse-of-discretion standard."
*United States v. Jackson*, 547 F.3d 786, 792 (7th Cir. 2008).
The defendant must also actually raise the argument at
the district court. *See United States v. Cunningham*, 429
F.3d 673, 676 (7th Cir. 2005) (noting that a district court
"must, if asked by either party, consider whether the
guidelines sentence actually conforms, in the circum-
stances, to the statutory factors"). Here, Littrice's counsel
only raised her health issues in the context of the facility

in which she would be incarcerated so it "would be able to deal with some of these issues." The court recognized the request by stating that it could "make a recommendation that" the Bureau of Prisons evaluate "her physical situation" in her placement. Littrice simply never gave the district court a reason to discuss her health issues in its § 3553(a) analysis.

As to the district court's discussion of Littrice's family circumstances, we find that the district court did not abuse its discretion in its consideration of her several children. The district court stated that "Littrice does present a sympathetic situation in that she is obviously the devoted mother to her own children and those that were born to other women but to whom she is devoted as a mother herself." Given that the district court expressly gave her family circumstances some weight, we don't find that the sentence imposed was unreasonable, particularly in relation to the substantial aggravating circumstances cited by the district court, including her education, financial and intellectual abilities, knowledge of the tax code and duty to provide truthful information, and that her actions caused the IRS to audit her clients. Additionally, Littrice failed to appear for a sentencing hearing, she was dishonest to the district court, she frivolously denied the court had jurisdiction over her, and similarly asserted she was an independent sovereign protected by the Eleventh Amendment. We are satisfied that the court "connected the facts relating to the statutory factors to the sentence" imposed. *Cunningham*, 429 F.3d at 676.

### III. Conclusion

We DISMISS the aspect of Littrice's appeal seeking dismissal of the indictment and AFFIRM the sentence.