In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-2760

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

DAMON RUCKER,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Western Division.
No. 13 CR 50005 — **Frederick J. Kapala**, *Judge.*

ARGUED APRIL 3, 2014 — DECIDED AUGUST 19, 2014

Before POSNER, FLAUM, and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* After Damon Rucker physically attacked a co-defendant who had testified against him at his sentencing on a narcotics conviction, Rucker was charged with and convicted of witness retaliation, in violation of 18 U.S.C. § 1513(b). The district court ordered him to serve a prison term of twenty years (the statutory maximum), consecutive to the term imposed on his narcotics conviction. Rucker appeals,

contending that the evidence was not sufficient to support his conviction, that his sentence is substantively unreasonable, and that he was deprived of the effective assistance of trial counsel. Finding no merit in any of these arguments, we affirm Rucker's conviction and sentence.

**I.**

Rucker purchased two kilograms of cocaine from Celestino Alvarez-Montejano ("Alvarez") for $64,000 in cash on October 8, 2011. Six weeks later, a grand jury charged Rucker, Alvarez, and three others with conspiracy to distribute a controlled substance and other narcotics offenses. Rucker chose to plead guilty to a charge that he had attempted to possess, with the intent to distribute, two kilograms of cocaine.

Rucker initially disputed the additional quantity of narcotics that should be attributed to him as relevant conduct and which would increase his base offense level. *See* U.S.S.G. §§ 1B1.3, 2D1.1(c). The government averred that, in the five years prior to the October 2011 sale, Rucker had been purchasing kilogram-quantities of cocaine from Alvarez as often as six to eight times per year; Rucker would then "rock" the powder cocaine by converting it to crack cocaine. The government's position was that an additional fifteen kilograms of cocaine should be attributed to Rucker as relevant conduct, based on a conservative assumption that he had purchased one to three kilograms of cocaine from Alvarez three to four times yearly. *See United States v. Rucker*, No. 11 CR 50052-5, R. 83 at 3 ¶ 7.

At a sentencing hearing conducted on November 8, 2012, the government presented the testimony of Alvarez in support of its position as to relevant conduct. Alvarez had also pleaded

guilty (to the conspiracy charge along with a charge that he had reentered the country illegally following deportation) and had agreed to cooperate with the government. Alvarez recounted his past narcotics transactions with Rucker, which included sales of both marijuana and cocaine; by Alvarez's estimate, Rucker had been purchasing two or three kilograms of cocaine from him every two to three months beginning in 2007 or 2008. Rucker was present in court for this testimony; indeed, Alvarez identified him from the witness stand. After a thorough cross-examination of Alvarez, Rucker's lawyer asked for a continuance so that he could look further into the veracity of Alvarez's testimony, unless the court was prepared to say that it would not consider his testimony in assessing relevant conduct. The court indicated that it was not prepared to disregard Alvarez's testimony; it therefore continued the hearing until December 12, 2012.

At the continued hearing, the parties presented a stipulation in which they agreed that an additional three and one-half to five kilograms of cocaine should be attributed to Rucker as relevant conduct. That quantity resulted in a two-level increase to Rucker's base offense level, and in turn boosted the advisory sentencing range from a prison term of 63 to 78 months to a term of 78 to 97 months. Defense counsel characterized the agreed-upon drug quantity as a "compromise," and urged the court to consider the possibility that Alvarez had been less than truthful in his testimony and that Rucker may in fact have purchased substantially less cocaine from him than Alvarez had said. *United States v. Rucker*, No. 11 CR 50052-5, R. 154 at 6-7. In its sentencing remarks, the district court noted the apparent inconsistency between Rucker's substantial history of

drug-dealing (among other offenses) on the one hand and his positive attributes on the other (the court had received a number of glowing letters from family, friends, and clergy).

> I have a hard time reconciling these two people. You can be a wonderful person who does noble acts, and you can also be a monster. Who is the real Damon Rucker[?] I don't know.

*Id.* at 16. For his part, Rucker assured the court that his narcotics offense was "out of character" and that he would "take the time to get everything in order in my life and come back home and be a productive citizen." *Id.* at 11. The district court ordered Rucker to serve a within-Guidelines prison term of 87 months.

On December 20, 2012, eight days after he was sentenced, Rucker encountered Alvarez in a holding cell in the Ogle County jail where inmates were being assembled and prepared for transport to other locations.[1] Rucker was present in the cell with other prisoners when Alvarez was brought into the cell already secured for transport in hand and leg shackles. Unlike Alvarez, Rucker had not yet been placed in restraints. According to Alvarez, when he first entered the cell, he did not notice Rucker (who was at the far end of the cell) and instead began chatting with another inmate that he knew. Alvarez first became aware of Rucker's presence when Rucker remarked,

---

[1]  The Ogle County jail in Oregon, Illinois (roughly 100 miles west of Chicago) was one of a number of county jails in or near the Chicago metropolitan area that had contracted with the United States Marshals Service to house federal detainees while criminal proceedings involving those detainees were pending in the district court in Chicago.

"There's the trick" or "That's the trick right there." R. 83 at 186, 199. Alvarez understood the comment to be a reference to the fact that he had testified against Rucker. Two other inmates in the cell would later testify that they heard Rucker make a remark that likewise referred to Alvarez's status as a cooperating witness, although they recalled Rucker using different language. According to Tony Walton, Rucker had declared, "You like to get on the stand on people." R. 84 at 45. And according to William "Joe" Farrell, Rucker had stated, "You're going to have to show your paperwork wherever you go." R. 84 at 78. Alvarez recalled uttering a brief retort to Rucker along the lines of, "[W]hy don't you say the full story?" R. 83 at 187.

Apart from the words Rucker uttered, what he did next is undisputed and, in fact, was captured on video (albeit without sound) by a security camera. Rucker waited for another prisoner to be removed from the cell for shackling and for the departing guards to close the outer as well as the inner door at the entry to the cell. As soon as the outer door was closed, Rucker walked across the room to Alvarez (whom he outweighed by almost eighty pounds), put his hand on Alvarez's shoulder, moved him off the ledge where he was standing to a nearby wall, and then slammed Alvarez's head against the concrete wall. To Walton, it "[s]ounded like a baseball hitting a bat[.]" R. 84 at 46. Alvarez immediately collapsed to the floor and began to convulse; blood ran from his head. Rucker returned to the other side of the cell and stood watching Alvarez. After twenty seconds or so, Rucker walked to the cell door and informed the guard that Alvarez had slipped and fallen and was having a seizure. Guards cleared the cell while

emergency medical personnel attended to Alvarez, who was still shaking. Walton testified that Rucker subsequently remarked to the other prisoners, "He shouldn't have snitched on me. He shouldn't have told on me. That's what happens. Whatever happens, happens." R. 84 at 48. Farrell recalled Rucker saying, "He shouldn't have done it." R. 84 at 83. Alvarez was transported by ambulance to a local hospital, where he underwent a CT scan and had a small laceration on his head cleaned and stapled; he was returned to the jail within a few hours. Alvarez testified that he still experiences daily neck pain as a result of the injury.

Rucker was subsequently charged with witness retaliation in violation of section 1513(b), and the case went to trial. The government presented the testimony of Alvarez, Walton, and Farrell, among others. And, of course, the video recording of the incident was played for the jury. The defense did not present any witnesses, but argued that the government's evidence did not show that Rucker attacked Alvarez with the intent to retaliate against him for his testimony at Rucker's sentencing. The jury found Rucker guilty as charged.

The Sentencing Guidelines advised a sentence in the range of 210 to 262 months, which was capped at 240 months by the statutory maximum. After considering the sentencing factors set forth in 18 U.S.C. § 3553(a), the district court opted to impose a sentence at the statutory maximum. The court described Rucker's retaliatory attack on Alvarez as "cold, calculated, and deliberate," R. 85 at 41, and emphasized that it undermined the safety and security of the jail as well as the integrity of the judicial process. A substantial sentence was therefore warranted, in the court's view, in order to deter

Rucker and others from committing similar acts. The court also noted that just eight days prior to the attack, Rucker had assured the court that his narcotics offense was out of character and that he was making an effort to get his life in order and to become a productive citizen. In light of the subsequent attack on Alvarez, the court found these assurances to be "insincere and deceitful." R. 85 at 44. In short, Rucker was "a menace" from whom the public needed protection. R. 85 at 43–44. The court thus concluded that he should not only be sentenced to the maximum term of 240 months, but that he should serve that sentence consecutively to the term imposed on his narcotics conviction.

## II.

As we noted at the outset, Rucker pursues three issues in this appeal. He first challenges the sufficiency of the evidence underlying his conviction, primarily attacking the credibility of the three witnesses to the attack on Alvarez. He moves on to contest the reasonableness of the sentence, including the district court's order that he serve it consecutively to his narcotics sentence. Finally, Rucker contends that his trial counsel was ineffective, both in stipulating that Alvarez's testimony contributed to an increase in his narcotics sentence and in failing to move for a judgment of acquittal at the close of evidence.

### A. Sufficiency of the Evidence

Rucker's contention that the evidence is insufficient to support the jury's verdict focuses, as his defense at trial did, on the element of intent. To prove Rucker guilty of the section 1513(b) offense, the government was obliged to show not only

that Rucker caused bodily injury to Alvarez, but that he did so with the intent to retaliate against Alvarez for the latter's testimony against Rucker. *United States v. Bolen*, 45 F.3d 140, 142 (7th Cir. 1995). Rucker contends that there is inadequate evidence that he harbored such an intent when he injured Alvarez. He notes that the encounter between them was fortuitous and occurred without forewarning: the Marshals Service had requested that Alvarez be separated from Rucker, and it is undisputed that the two never should have been placed in the cell together. Rucker also maintains, as he did below, that he harmed Alvarez in the midst of an argument, not with an intent to punish him for his testimony.

Typically, we will affirm a conviction against a challenge to the sufficiency of the underlying evidence so long as that evidence, construed favorably to the government, would permit a rational jury to find that each element of the offense was proven beyond a reasonable doubt. *E.g.*, *United States v. Whiteagle*, No. 12-3554, — F.3d —, 2014 WL 3562716, at *14 (7th Cir. Jul. 21, 2014). In this case, however, there was no defense motion for a judgment of acquittal made at the close of evidence, so our review is solely for a miscarriage of justice. *E.g.*, *United States v. Natale*, 719 F.3d 719, 743 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 1875 (2014). "This 'most demanding standard of appellate review' permits reversal only if 'the record is devoid of evidence pointing to guilt, or if the evidence on a key element of the offense was so tenuous that a conviction would be shocking.'" *Id.* (quoting *United States v. Taylor*, 226 F.3d 593, 597–98 (7th Cir. 2000)).

Our review of the record satisfies us that the evidence is sufficient to support Rucker's conviction under either of these two standards. Although the placement of the two men in the same holding cell occurred by mistake, the evidence supports the inference that Rucker took full and deliberate advantage of the unexpected opportunity to punish Alvarez. Upon Alvarez's arrival in the cell, Rucker uttered a remark indicating that Alvarez's testimony against him was at the forefront of Rucker's mind. It is true, as Rucker emphasizes, that Alvarez, Walton, and Farrell differed on the words that Rucker used. But this is not surprising. The incident was over just as quickly as it had begun, the trial did not occur until some four months later, and human memory is imperfect. What matters is that each of the witnesses recalled Rucker making a remark that highlighted Alvarez's status as a cooperating witness. Rucker was free to argue, as he did, that the jury should not credit the witnesses' accounts given the inconsistencies as to exactly what they heard Rucker say. But the jury was entitled to conclude, as it obviously did, that the witnesses were being truthful and that regardless of the exact words Rucker used, he was chiding Alvarez for his cooperation with the government and that Rucker's subsequent attack on Alvarez was animated by an intent to retaliate against Alvarez for that cooperation.

The jury could also infer that the steps Rucker took next amounted to a deliberate and calculated attack on Alvarez, rather than a sudden loss of temper and control in the heat of an argument. Both the testimony and the video establish that Rucker waited until the guards had closed the outer door to the cell before he approached Alvarez and slammed his head against the concrete wall. The evidence likewise reveals that

Rucker waited for another moment after the attack, watching Alvarez on the floor, before he went to the door and summoned help, falsely telling the guard that Rucker had slipped and fallen. Finally, and perhaps most tellingly, after he and the other prisoners were removed from the holding cell, Rucker remarked to the other prisoners, "He shouldn't have snitched on me. He shouldn't have told on me. That's what happens." R. 84 at 48; *see also* R. 84 at 83 ("He shouldn't have done it.").

Rucker contends that the evidence does not demonstrate that he perceived Alvarez's testimony as having had a negative impact on his sentence, noting that the dispute as to his relevant conduct was ultimately resolved by way of a stipulation between the parties. But whatever impact Alvarez's testimony ultimately did or did not have on the sentence is, in a sense, beside the point. Alvarez testified on the government's behalf at Rucker's sentencing, and he did so at a point in the proceeding when the defense was contesting the extent of Rucker's relevant conduct. Rucker was present in court for Alvarez's testimony, and it is a fair inference, to say the least, that he would have appreciated that Alvarez was not there to help the defense. In short, the jury readily and reasonably could have inferred (independently of the parties' stipulation that Alvarez's testimony contributed to an increase in Rucker's sentence) that Rucker had reason to be displeased with Alvarez's cooperation with the government and his decision to testify for the government at Rucker's sentencing.

In sum, from Rucker's words and actions, the jury reasonably concluded that Rucker attacked and caused bodily harm to Alvarez because of his cooperation with the government and with the intent to retaliate against him for that cooperation.

B.  Reasonableness of the Sentence

We begin our evaluation of Rucker's sentence with the observation that the sentence, although at the statutory maximum, was within the advisory Guidelines range. We therefore presume that it is reasonable. *Rita v. United States*, 551 U.S. 338, 347, 127 S. Ct. 2456, 2462–63 (2007); *see also, e.g., United States v. Valley*, 755 F.3d 581, 587 (7th Cir. 2014) (per curiam). Rucker bears the burden of rebutting that presumption by showing that the sentence is unreasonable as measured against the sentencing factors set forth in section 3553(a). *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005). He fails in his attempt to make this showing.

The district court considered both the mitigating as well as the aggravating aspects of Rucker's history and his offense in light of the section 3553(a) criteria. The court ultimately concluded that what was most important was that the offense was calculated, that Rucker committed the offense within days of his sentencing for another offense, that an offense of this nature was an affront to the judicial process and jeopardized prison security and discipline, and that, consequently, a stiff sentence was warranted in order to both protect the public from Rucker and to deter others from committing a similar offense. We can find no fault either with the thoroughness of the court's analysis of the pertinent factors or the conclusion to which it came. The sentence is severe, but it is a lawful sentence and the judge appears to have given conscientious consideration to it.

Rucker challenges certain of the factual findings underlying the court's determination. We have already addressed his

contention that the evidence does not support a finding that he had reason to believe that Alvarez's testimony had had a negative impact on his sentence, and that he was acting with an intent to punish Alvarez on that ground. Rucker also contends that the evidence does not support the judge's finding that his actions during the encounter were "cold, calculated, and deliberate." R. 85 at 41. But this was by no means a clearly erroneous characterization of his actions: Rucker had time to contemplate what he was doing; he simply seized an unexpected opportunity to obtain retribution against Alvarez. His remarks after the fact lend all the confirmation that is necessary to show that his actions were deliberate.

Rucker also challenges the court's decision to order that his sentence on the retaliation charge be served consecutively to his sentence on the narcotics charge. Our review of that decision is for abuse of discretion. *See United States v. Littrice*, 666 F.3d 1053, 1059 (7th Cir. 2012) (citing *United States v. O'Hara*, 301 F.3d 563, 571 (7th Cir. 2002)).

That court was well within its discretion in making the retaliation sentence consecutive to the narcotics sentence. The criminal code indicates that ordering a defendant to serve consecutive rather than concurrent sentences which were imposed at different times is the default,[2] and the relevant provision of the Guidelines specifically advises consecutive

---

[2]  18 U.S.C. § 3584 provides, in relevant part, that "[m]ultiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently." *See United States v. Jackson*, 546 F.3d 465, 472 (7th Cir. 2008) (citing *Romandine v. United States*, 206 F.3d 731, 737–38 (7th Cir. 2000)).

sentences in this situation.[3] The court appropriately considered the section 3553(a) sentencing factors in deciding between concurrent or consecutive terms, and its choice of the latter was entirely rational. The retaliatory attack on Alvarez was an offense entirely distinct from Rucker's narcotics offense; moreover, as the district court pointed out, his calculated decision to commit the attack, just days after he assured the court that he was on the road to reform, revealed Rucker to be a genuine threat to the public.

Finally, there is no merit to Rucker's contention that the district court erred in treating him as a career offender, a determination which was based in part on his narcotics conviction, and in relying upon that status as a reason (among others) for the consecutive sentence. Rucker was not being punished twice for his narcotics offense; he was being punished incrementally for his decision to engage in a second offense—and a particularly serious one in terms of its ramifications for cooperating witnesses like Alvarez—having already been convicted and sentenced for the first offense.

C.  Ineffective assistance

Rucker contends his trial counsel was ineffective for two reasons. First, his counsel stipulated that Alvarez's testimony

---

[3]    Guidelines section 5G1.3(a) states that "[i]f the instant offense was committed while the defendant was serving a term of imprisonment … or after sentencing for, but before commencing service of, such term of imprisonment, the sentence for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment." *See United States v. Campbell*, 617 F.3d 958, 960 (7th Cir. 2010) (noting that the guideline's specification of consecutive sentences is "informative, but not binding").

at Rucker's narcotics sentencing contributed to a twenty-four month increase in that sentence. *See* R. 83 at 214. Second, his attorney did not move for a judgment of acquittal at the close of evidence, which as noted limits our review to one for a miscarriage of justice.

A claim that a defendant was deprived of the effective assistance of trial counsel is one that is ill-suited to resolution on direct appeal, as it typically requires evaluation of the circumstances that confronted counsel and the reasoning that informed his decisions and defense strategy. *E.g.*, *United States v. Jones*, 635 F.3d 909, 916 (7th Cir. 2011). Consequently, "a defendant who presents an ineffective-assistance claim for the first time on direct appeal has little to gain and everything to lose," *United States v. Taylor*, 569 F.3d 742, 748 (7th Cir. 2009) (quoting *United States v. Cooke*, 110 F.3d 1288, 1299 (7th Cir. 1997)), as the record is unlikely to lend sufficient support to such a claim, and by raising it on direct appeal, the defendant will be foreclosed from pursuing the same claim on collateral review, *e.g.*, *United States v. Wallace*, 753 F.3d 671, 676 (7th Cir. 2014). At oral argument, we asked Rucker's counsel whether she really wished to pursue this claim on direct appeal, and counsel confirmed that she does. So be it.

We see no evidence that trial counsel departed from professional norms in stipulating that Alvarez's testimony contributed to an increase in Rucker's sentence. The purpose of Alvarez's testimony was to establish relevant conduct (*i.e.*, additional amounts of narcotics for which Rucker was responsible beyond the two kilograms that he had acknowledged in pleading guilty) that would increase Rucker's offense level and

with it his advisory sentencing range. The extent of that conduct was a subject of dispute between the defense and the government until Alvarez testified. That Alvarez was examined and cross-examined extensively demonstrates his importance to that determination. Rucker's counsel described the eventual agreement as to the additional amount of cocaine as a "compromise," *United States v. Rucker*, No. 11 CR 50052-5, R. 154 at 6, and we note that it came to pass after the court, at the close of Alvarez's testimony, indicated that it was not prepared to altogether disregard his testimony as incredible, as the defense had suggested it should, *see United States v. Rucker*, No. 11 CR. 50052-5, R. 153 at 125–126. It is thus a fair inference that the eventual agreement between the parties as to Rucker's relevant conduct came to pass in part (if not in whole) because of Alvarez's adverse testimony. Rucker has given us no reason to believe that he had a plausible factual basis on which to dispute the notion that Alvarez's testimony contributed to an increase in his sentence, nor has he given us reason to second-guess counsel's strategic decision to stipulate to the nexus, which obviated the need for testimony explaining the context and significance of Alvarez's testimony and thus confined to a minimum prejudicial evidence regarding Rucker's history of narcotics trafficking. *Cf. United States v. Hope*, 906 F.2d 254, 264 (7th Cir. 1990) (noting that stipulating to a prior conviction may be the lesser of two evils for the defense).

Our previous discussion of the sufficiency of evidence supporting Rucker's conviction disposes of his contention that his counsel was ineffective in failing to move for a judgment of acquittal at the close of evidence. Even if we assume that trial counsel is invariably required to make such a motion, Rucker

cannot possibly establish that he was prejudiced by the omission, *see, e.g.*, *United States v. Persfull*, 660 F.3d 286, 296 (7th Cir. 2011); *United States v. Allen*, 390 F.3d 944, 951 (7th Cir. 2004), as the proof that he caused bodily harm to Alvarez with the intent to retaliate against Alvarez for testifying against him as a cooperating witness was more than sufficient. This was not a case, in other words, in which the standard of review applicable to the sufficiency claim made a difference.

### III.

Rucker's conviction on the charge of witness retaliation was amply supported by the evidence, the sentence he received was substantively reasonable, and the record does not support his contention that his trial counsel was prejudicially ineffective as to the two matters he highlights. The judgment is AFFIRMED.