In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-1586

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

HENRY POSADA,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 17 CR 00165-1 — **Edmond E. Chang**, *Judge.*

ARGUED APRIL 3, 2019 — DECIDED JULY 18, 2019

Before WOOD, *Chief Judge,* and BAUER and ROVNER, *Circuit Judges.*

BAUER, *Circuit Judge.* Henry Posada ("Posada") was found guilty of 18 counts of health care fraud by a jury. At sentencing, the district court found a loss amount of $4,087,736, and imposed a sentence of 60 months in the custody of the Bureau of Prisons. Posada appeals his sentencing, arguing that the

district court's loss calculation is clearly erroneous. We disagree, and for the following reasons, affirm.

## I.  BACKGROUND

Posada was a licensed chiropractor and the owner-operator of Associated Back Care and Rehabilitation, doing business as Spine Clinics of America, S.C. ("Spine Clinics"). Spine Clinics provided chiropractic and physical therapy services and was a Medicare enrolled provider. In March 2017, Posada was indicted for a scheme to defraud Medicare and other health care benefits programs ("Insurers") by submitting fraudulent claims and falsely representing that certain health care related services were provided.

At trial, the Government presented evidence that Posada billed Insurers for deceased patients and services never performed, created fake files to cover-up his fraud, and failed to document the actual services rendered. Witnesses from Medicare and an Insurer testified regarding the thousands of claims submitted. Two physical therapists also testified about the services they performed for Spine Clinics, how they billed Posada, and that they never performed many of the services for which he charged Insurers and Medicare. Following Posada's conviction, the Government submitted a Presentence Investigation Report ("PSIR") that had an offense level of 26, due in large part to a loss amount of $4,087,736, and recommended a term of incarceration between 63 and 78 months.

To calculate the loss amount the Government reviewed files seized from Spine Clinics, and when no documentation in support of treatment was present, the amount billed was treated as a loss. The Government also credited Posada with,

among other things, treating 20 patients a day (10 Insurer patients and 10 Medicare patients), three days a week every week during the period of the fraud. Posada argued for an estimate of 25 or 26 patients per day and a loss amount less than $3.5 million dollars. But, the district court found that the Government's loss calculation was premised on a reasonable estimate and found a loss amount of $4,087,736.

## II.  DISCUSSION

Posada contends that the district court's loss amount determination was clearly erroneous. Posada argues that the Government relied on flawed assumptions to determine the number of patients treated in a day and the district court inappropriately discounted evidence demonstrating he saw in excess of 20 patients per day, three days per week. He suggests the total loss amount was below $3.5 million, and he saw far more than 20 patients per day.

### A.  Standard of Decision

We review the district court's loss determination for clear error. *United States v. Frith*, 461 F.3d 914, 917 (7th Cir. 2006). "A loss determination must be based on the conduct of conviction and relevant conduct that is criminal or unlawful, and the government must demonstrate by a preponderance of the evidence that the loss amount is attributable to that criminal or unlawful conduct." *United States v. Orillo*, 733 F.3d 241, 244 (7th Cir. 2013) (citing *United States v. Littrice*, 666 F.3d 1053, 1060 (7th Cir. 2012)). We will only disturb the district court's findings if "we are left with the definite and firm conviction that a mistake has been committed." *United States v. Severson*,

569 F.3d 683, 689 (7th Cir. 2009) (internal citations and quotations omitted).

During sentencing, the district court may rely on information presented in the PSIR "so long as this information 'has sufficient indicia of reliability to support its probable accuracy.'" *United States v. Sunmola*, 887 F.3d 830, 839 (7th Cir. 2018) (quoting *United States v. Vivit*, 214 F.3d 908, 916 (7th Cir. 2000)). "When the district court relies on information contained in the [PSIR], the defendant bears the burden of showing the information is inaccurate or unreliable." *Id.* (citing *United States v. Heckel*, 570 F.3d 791, 795 (7th Cir. 2009)). A bare denial is not enough. *United States v. Betts-Gaston*, 860 F.3d 525, 539 (7th Cir. 2017), *cert. denied*, 138 S. Ct. 689 (2018).

## B. The District Court Correctly Relied on Information Contained in the PSIR to Determine the Loss Amount

Following trial, the Government submitted a PSIR compiled by the Probation Department; the Government's sentencing memorandum agreed with the loss calculations reached in the PSIR. The initial loss amount was calculated to be $5,182,988. The loss was reached by reviewing files seized from Spine Clinics and Posada, and where there was no documentation to support the services billed, that amount was treated as a loss.

But, to reach the reduced loss figure, $4,087,736, Posada was credited for seeing 20 patients per day, three days per week for the duration of the fraud. In reaching that number the Government considered Posada's patient witnesses and concluded that he saw at a minimum of 10 patients per day. The Government also considered the testimony of Posada's wife who testified that he worked at least three days per week.

The Government also credited Posada with seeing a large number of patients on an *ad hoc* basis, for example he was credited with seeing 60 patients per day for 15 days from July 7, 2014, through August 8, 2014. Moreover, Posada was given credit for 20 patients per day, three days per week for the duration of the fraud, even during times when the Government knew him to be traveling or hospitalized.

Posada argued, in his filed objections to the PSIR and at sentencing, that the Government failed to interview many of the potential patients that were observed during the two surveillance operations conducted; that the Government placed too much weight on the testimony of John Tiu and Richard Latane because the services they rendered were different than those performed by Posada; and that not enough weight was given to patient testimony because in some cases the care provided outweighed the care billed.

At sentencing, the district court considered the PSIR as well as Posada's objections. The district court judge stated that he considered the testimony of Mr. Tiu and Mr. Latane and the number of patients they saw—noting that if Posada were given credit for more than 20 patients per day it would be over double the number Mr. Tiu and Mr. Latane saw. He considered the patient testimony which stated that treatments were typically 15 to 20 minutes long—noting that 15 to 20 minute treatments translated to between 18 and 21 patients in a 6 to 7 hour workday. The judge also considered the FBI surveillance conducted and discounted the number of "patients" observed because if Posada were treating each of the observed patients, their treatments would have been approximately 5 minutes on the first surveillance date and less than 10 minutes on the

second date—considerably less than the 15 to 20 minutes treatment range articulated by the testifying patients.

Finally, the district court judge observed that the objections of the defense were "a lot of adjectives without a lot of concrete facts[.]" Transcript of Sentencing Hearing at 16, *USA v. Posada*, No. 1:17-cr-165 (Feb. 13, 2018). Essentially, the testimony was that Posada's practice was always very busy but no other evidence supported this position. The court concluded that 20 patients per day, three days per week was a reasonable estimate and the single greatest factor was the lack of actual patient records and so in these circumstances crediting Posada with more would reward him for absence of records.

Posada's argument here is the same as his argument before the district court: he would prefer a different interpretation of the Government's evidence used to determine the loss amount. However, to have the court reach a different result, Posada was required to present some evidence that called the PSIR into question. To disturb the district court's determination, he must show a clear error. He has not.

### III.  CONCLUSION

At sentencing, the district court carefully considered the recommendation contained in the PSIR and evaluated the evidence used to reach that conclusion. The court articulated its myriad considerations for determining the loss amount and his refusal to adopt Posada's patient recommendation. Because we find no error at sentencing, we AFFIRM.